### WITT v. DERSHAM.

1. SALES—REPLEVIN BY BUYER—NECESSITY OF TENDER OF PRICE. Where a contract for the sale of hay provides that the buyer shall bale it at once at his own expense and pay a certain price per ton for it when delivered by the seller at the car at a certain station, the buyer cannot maintain replevin for the hay until he has paid or tendered the agreed price unless tender is waived.

2. SAME—TENDER—WAIVER. Where a seller of hay refuses to deliver it according to contract and makes no claim of lien upon it for the purchase price, but instead insists that he has absolute title to it and that the purchaser has no interest in it, his refusal to deliver is equivalent to notice that tender of payment under the contract will not be received and constitutes a waiver of such tender.

Error to Lenawee; Chester, J. Submitted June 13, 1906. (Docket No. 110.) Decided October 1, 1906.

Replevin by John P. Witt against George Dersham. There was judgment for plaintiff, and defendant brings error. Affirmed.

*H. R. Clark* and *J. L. O'Mealey*, for appellant.

*Smith, Baldwin & Alexander*, for appellee.

BLAIR, J. This is an action of replevin for certain hay sold by defendant to plaintiff under a verbal contract, the terms of which are agreed upon except as to the time of delivery. By the agreement plaintiff was to bale the hay at once at his own expense, and was to pay the defendant therefor $8 per ton when the hay was delivered by defendant at the car in Holloway, a station on the Wabash Railroad. The plaintiff testified that by the agreement the baled hay was to remain in defendant's barn until such time as plaintiff could procure a car after shipping out three car loads under prior contracts. The defendant testified:

"I said, 'If you take the hay right away, you can have the hay, and under no other conditions.' I said, 'I don't want to sell the hay at all and have it laying around in my barn and in the way.' He agreed to take it just as quick as they were through baling, and then I was to go to drawing; and I said, 'You can have it.'"

The hay was baled, in accordance with the agreement, some time between the 15th and 20th of October, but plaintiff was unable to procure a car until the 3d or 4th of December. Defendant eventually refused to deliver the hay and offered to pay plaintiff for the expense of baling, though he did not make a technical tender. Thereupon plaintiff began this suit, and took the hay upon the writ and shipped it away. The next day after taking the property on the writ of replevin plaintiff went to the defendant with the money for the hay, something over $109, and tendered it to him.

"He says, 'I don't want it.'
" Q. Did he refuse to take it?
" A. Refused to take it and walked away; turned his back, and walked away.
" Q. And you have been ready to pay it; have you got the money to pay him; have you had ever since?
" A. Yes, sir; I have.
" Q. Ready now?
" A. I am ready now."

The court instructed the jury that, if they found the

facts to be as claimed by the plaintiff, they should find a verdict in his favor; and:

"You will then ascertain the value of this hay at $8 a ton, and from that you will deduct the value of the services rendered by the plaintiff in conveying this hay from defendant's place to the car, and you will announce to the court the difference between these two values."

The verdict and judgment were in favor of plaintiff and were entered together. As to defendant's interest in the property, the verdict and judgment are as follows:

"And further find that the said defendant, George Dersham, had a lien on said property for the purchase price, amounting to one hundred four dollars, and from that amount shall be deducted ten dollars for drawing the hay. Therefore it is adjudged and determined that the said plaintiff, John P. Witt, do recover against said defendant, George Dersham, his damages aforesaid, assessed at six cents, together with all costs and charges to be taken, and that the said John P. Witt have execution therefor; and it is further adjudged and determined that the said defendant, George Dersham, have a lien on said property and do recover from the said plaintiff, John P. Witt, the difference between the expense of drawing the hay, and the value of said hay, namely, ninety-four dollars, and that the said defendant, George Dersham, have execution therefor."

The theory upon which the court proceeded, as shown by his opinion denying a motion for a new trial, was as follows:

"The question raised by this contract is, Was payment or tender of payment necessary before plaintiff could legally bring replevin? That is, Is tender or payment a condition precedent to plaintiff's right to maintain replevin? I think not. By the terms of the contract, the time for payment was extended to the time when the hay was in the car. In other words, there was a term of credit which did not mature until the hay was in the car. Again, a part of the value of this hay was the delivery of it, and it would be unjust to require the plaintiff to pay or tender that amount, and then be to the expense of delivering it himself. * * * It seems to me that under a

contract like this one, where nothing is due until the hay was in the car, that a tender is not a condition precedent to taking the hay with a writ of replevin and placing it in the car. The undisputed proof is that the plaintiff did tender the amount as soon as the hay was in the car, and that it was refused by the defendant, and that this tender was not brought into court. However, the judgment entered in this case secures to the defendant his pay for this hay."

Prior to bringing suit plaintiff had a talk with defendant, who came to see him.

"I told him there in the cornfield that he could have the money on the hay if he wanted it. I didn't have the money with me, but could get it on short notice. I told him he could have it. I didn't offer it to him. I didn't talk money to him any more until after I took the hay. He said to me there in the cornfield that he didn't come there for money, but to find out how soon I could take the hay away."

After judgment the plaintiff paid into court the sum of $94, the amount due defendant under the verdict and judgment.

The sole question involved in the case is, as stated in appellant's brief :

"That of the right of the plaintiff in this case to replevin the hay in question without first paying or tendering the purchase price of it to the defendant; there being no term of credit agreed upon and no waiver of such right."

Under the contract, as claimed by the plaintiff and found by the jury, no credit was given or extended by defendant for the price of the hay. The agreed price was to be paid by plaintiff to defendant at the time of delivery. In the meantime defendant had possession of the hay under his vendor's lien, which could only be discharged by payment, tender, or waiver. No payment was made, nor was there any lawful tender made prior to bringing suit. Defendant was, therefore, entitled to verdict, unless he had waived a tender of payment. *Minear*

v. *Phelps*, 112 Mich. 84; *Burke* v. *Dunn*, 117 Mich. 430; *Wilbur* v. *Flood*, 16 Mich. 40.

It is insisted on the part of the plaintiff that the testimony in the record establishes a waiver of tender on the part of defendant. This question was not submitted to the jury and does not appear to have been raised by counsel nor considered by the court, but, if the evidence conclusively showed a waiver of tender by defendant, the instruction of the court, while based upon an erroneous construction of the contract, was correct in its result. We think the evidence does show such waiver.

Defendant testified:

"The next time I saw him was at my place on Sunday. He said he had some cars at Wellsville and wanted me to draw the hay over there. I told him I didn't care to draw it there; but, if he would turn in his team and help, I would be ready to go to work the next morning. He said he didn't propose to help draw the hay. Then I wanted him to pay me for what damage it had been to me and then I should draw the hay myself, and he wouldn't do that, so I said, 'That ends it, then.' * * * About two weeks after the Sunday in question, he came to see me again. At that time he wanted me to draw it to Holloway. I told him I would draw it to Holloway if he would turn in his team and help. He said he wouldn't do it, so I said, 'That ends it.' * * * After he was there the last time mentioned, I think the next time I heard from him was when Mr. Baldwin sent down notice and I came up and talked with Mr. Baldwin and Mr. Clark. Mr. Baldwin said that Witt had agreed to help draw the hay if I was willing to draw the hay now, in that way, to Holloway, and I said I had agreed that I would help draw the hay, and I would draw it if we could get it out right away, rather than go to law about it. I never heard a thing of it. It was 13 days afterwards, then he came and wanted me to draw the hay, and I told him, 'No, sir,' I says, 'thirteen days ain't right away.' When I agreed to draw the hay and let him help draw it, when they said right away, I supposed that meant within a day or two anyway. I had no idea it was going to last 13 days before they would notify me. I then refused to let him have it and told him the hay didn't belong to him any more. The next I heard of it was when the sheriff

came there with them and they took the hay. I had the barn locked, the sheriff ordered me to open it, and I opened it, after he read the paper and bonds that he had given. I told Mr. Witt to keep out in the road until he had a right in there. * * * I was drawing·oats to Holloway at one time when Mr. Witt was there loading oats. After I got through unloading I drove to the car where Witt was putting in his oats and called him to the door and said, 'Come up to the store when you get through, and I will pay you for the baling of that hay.' He came to the door and said, 'You don't owe me anything.' 'Oh,' I says, 'all right. I am better off than I thought I was then.' * * * Afterwards I told him, if he wouldn't help me draw the hay to Holloway, he couldn't have it. I refused to draw the hay on the ground that he didn't take it according to agreement, according to contract. * * * I didn't say to Mr. Baldwin that I wasn't going to let Mr. Witt have the hay because the bargain wasn't in writing. I said I didn't consider the hay belonged to him any more. I said the bargain wasn't fulfilled on his part; that is why I wouldn't draw the hay. * * * I told him that the contract between Clark and Baldwin up to Adrian had run out and I didn't calculate to agree to draw this hay and load it here 13 days afterwards, and told him I wouldn't draw it at all, and told him he couldn't have it."

Plaintiff testified:

"After I had talked with Mr. Baldwin over the telephone I went to Holloway and urged the cars as fast as I could. When the car came, I went right over and notified Mr. Dersham and said to him, 'I will be over tomorrow with a team to load that hay;' and he said 'Do not come into my yard, or I will kick you out with the butt end of something.' This is what he said. Those were the words he gave me. I asked him to deliver the hay and he refused."

It is clear that throughout the transaction and throughout the trial the defendant was, in effect, denying that he had a lien and insisting that he had the absolute title to the hay and that the plaintiff had no interest in it whatever. His final refusal to deliver was absolute and unconditional and equivalent to notice to the plaintiff that a

tender of payment under the contract would not be received and constituted a waiver of such tender. *Galvin* v. *Iron Works*, 81 Mich. 16; *Jones* v. *Assurance Co.*, 120 Mich. 211; *Lacy* v. *Wilson*, 24 Mich. 479; 28 Am. & Eng. Enc. Law (2d Ed.), pp. 7-9; *Everett* v. *Saltus*, 15 Wend. (N. Y.) 474; *Holbrook* v. *Wight*, 24 Wend. (N. Y.) 169.

The error of the court did not prejudice the rights of defendant, and by the payment of the amount due defendant into court he was fully protected.

The judgment is affirmed.

Grant, Montgomery, Ostrander, and Moore, JJ., concurred.