**UNITED STATES**

**v.**

**AMERICAN TEXTILE MACHINE CORP.**

**Civ. No. 1246.**

United States District Court
M. D. Tennessee, Nashville Division.

Dec. 24, 1953.

James M. Swiggart, Asst. U. S. Atty., Nashville, Tenn., and Julian R. Wilheim, Attorney, Claims Division, Department of Justice, Washington, D. C., for plaintiff.

Judson Harwood and Cecil Sims, Nashville, Tenn., for defendant.

DAVIES, District Judge.

### Findings of Fact

1. Defendant American Textile Machine Corporation (formerly Air Utilities, Inc.) was, at all times material herein, and still is a corporation organized and existing under the laws of the State of Tennessee, having its principal office and place of business at Murfreesboro, Tennessee, and within the jurisdiction of this Court.

2. Defendant was renegotiated, for its fiscal year ended November 30, 1945, by the War Contracts Price Adjustment Board.

3. On October 7, 1948, the War Contracts Price Adjustment Board determined that, for its fiscal year ended November 30, 1945, defendant received excessive profits, within the meaning of the Renegotiation Act, as amended, 50 U.S.C.A.Appendix, § 1191, in the gross principal amount of $800,000 and that, after adjustment on account of taxes, other than Federal taxes, the amount of such excessive profits to be eliminated is $795,418.

4. By registered United States mail letter of October 7, 1948, which was received by defendant in due course, the War Contracts Price Adjustment Board notified defendant of its determination of excessive profits for defendant's fiscal year ended November 30, 1945.

5. By registered United States mail letter of October 21, 1948, which was received by defendant in due course, the War Contracts Price Adjustment Board, acting by and through its duly authorized delegatee, the Treasurer, Reconstruction Finance Corporation, demanded payment by defendant, on or before November 4, 1948, of the excessive profits of $795,418, less the applicable Federal tax credit, if any, as provided in Section 3806 of the Internal Revenue Code.

6. On November 30, 1948, defendant filed a petition in The Tax Court of the United States for de novo redetermination, pursuant to the Renegotiation Act of 1942, as amended, of the excessive profits determined by the War Contracts Price Adjustment Board with respect to its fiscal year ended November 30, 1945, being Docket No. 836–R of that Court.

7. Plaintiff joined issue in Tax Court Docket No. 836–R on October 18, 1949, and such redetermination proceeding has been, at all times material herein, and still is pending in The Tax Court of the United States.

8. With regard to its fiscal year ended November 30, 1945, defendant's Federal tax credit, computed in accordance with Section 3806 of the Internal Revenue Code, amounts to $585,491.34, leaving a net principal determination of excessive profits for such fiscal year, based on the October 7, 1948, determination of the War Contracts Price Adjustment Board, in the sum of $209,926.66.

9. Defendant was renegotiated, for its fiscal year ended November 30, 1946, by the War Contracts Price Adjustment Board.

10. On October 7, 1948, the War Contracts Price Adjustment Board determined that, for its fiscal year ended November 30, 1946, defendant received excessive profits, within the meaning of the Renegotiation Act of 1943, as amended, in the gross principal amount of $300,000.00 and that, after adjustment on account of taxes, other than Federal taxes, the amount of such excessive profits to be eliminated is $300,000.

11. By registered United States mail letter of October 7, 1948, which was received by defendant in due course, the War Contracts Price Adjustment Board notified defendant of its determination of excessive profits for defendant's fiscal year ended November 30, 1946.

12. By registered United States mail letter of November 5, 1948, which was received by defendant in due course, the War Contracts Price Adjustment Board, acting by and through its duly authorized delegatee, the Treasurer, Reconstruction Finance Corporation, demand-

ed payment by defendant, on or before November 30, 1948, of the excessive profits of $300,000, less the applicable Federal tax credit, if any, as provided in Section 3806 of the Internal Revenue Code.

13. On November 30, 1948, defendant filed a petition in The Tax Court of the United States for de novo redetermination, pursuant to the Renegotiation Act of 1942, as amended, of the excessive profits determined by the War Contracts Price Adjustment Board with respect to its fiscal year ended November 30, 1946, being Docket No. 837–R of that Court.

14. Plaintiff joined issue in Tax Court Docket No. 837–R on October 18, 1949, and such redetermination proceeding has been, at all times material herein, and still is pending in The Tax Court of the United States.

15. With regard to its fiscal year ended November 30, 1946, defendant's Federal tax credit, computed in accordance with Section 3806 of the Internal Revenue Code, amounts to $105,495.70, leaving a net principal determination of excessive profits for such fiscal year, based on the October 7, 1948, determination of the War Contracts Price Adjustment Board, in the sum of $194,504.30.

16. On January 16, 1951, defendant submitted a written offer to the Attorney General of the United States to compromise defendant's liability for excessive profits, arising from the determination thereof made by the War Contracts Price Adjustment Board for defendant's fiscal years ending November 30, 1945, and November 30, 1946, on the following basis:

(a) To pay to plaintiff the total amount of $58,000.00, in the following manner:

    (1) Upon receipt of acceptance of such offer ............. $20,000.00

    (2) On the 1st day of each month from February 1951 to July 1951, inclusive ............ 500.00

    (3) On the 1st day of each month from August 1951 to December 1951, inclusive ............ 1,000.00

    (4) On January 1, 1952 ............. 30,000.00

    (5) With interest on unpaid balances of the $58,000.00, payable, at the rate of 6% per annum, on the 1st day of each month from February 1951 to January 1952, inclusive.

(b) To waive any and all claims of defendant against plaintiff and to execute necessary forms of such waiver as required by plaintiff.

(c) To dismiss defendant's de novo redetermination proceedings, Docket Nos. 836–R and 837–R in The Tax Court of the United States.

(d) To provide the following collateral security for the payments to be made in the total amount of $58,-000.00:

    (1) A mortgage on defendant's plant and equipment, subject to a prior $74,000.00 Reconstruction Finance Corporation loan thereon.

    (2) Defendant's 510 shares of Hold-Stitch Fabric Machine Company stock, represented to be owned by defendant.

(e) If defendant defaults on any terms and conditions of the offer in compromise, the entire balance of plaintiff's renegotiation claim, as determined by the War Contracts Price Adjustment Board, shall become immediately due and payable.

(f) Upon plaintiff's acceptance of the offer in compromise, the summons and complaint against defendant in the United States District Court for the Middle District of Tennessee, Civil Action No. 1246, shall be dismissed, without prejudice.

(g) Upon plaintiff's acceptance of the offer in compromise, the Department of Justice shall request removal of any "stop payment orders" against defendant.

17. Between January 16, 1951, and January 22, 1951, defendant submitted to the Attorney General of the United States the following verbal supplements to its written compromise offer of January 16, 1951:

(a) To give plaintiff a mortgage on the 510 shares of Hold-Stitch Fabric Machine Company stock owned by defendant.

(b) To pay delinquent Federal taxes of, at least, $28,364.03, assessed against defendant by the Nashville, Tennessee, office, Bureau of Internal Revenue.

(c) To convey, or cause to be conveyed, to plaintiff non-exclusive, royalty-free licenses on patents owned by Hold-Stitch Fabric Machine Company.

18. On January 22, 1951, the Attorney General of the United States accepted defendant's offer in compromise of January 16, 1951, as amended by defendant's subsequent verbal supplements thereto, and notified defendant of such acceptance by telegram of January 23, 1951.

19. From January 16, 1951, to the present date, which includes all times material herein, defendant never tendered or delivered to plaintiff the following items, set forth in defendant's offer of compromise of January 16, 1951, as amended by defendant's subsequent verbal supplements thereto:

(a) A mortgage on the 510 shares of Hold-Stitch Fabric Machine Company stock owned by defendant.

(b) The delinquent Federal taxes of, at least, $28,364.03, assessed against defendant by the Nashville, Tennessee, office, Bureau of Internal Revenue.

(c) Non-exclusive, royalty-free licenses on patents owned by Hold-Stitch Fabric Machine Company.

(d) A mortgage on defendant's plant and equipment, subject to a prior $74,000.00 Reconstruction Finance Corporation loan thereon, or any other kind of mortgage on such plant and equipment.

(e) Dismissal of defendant's de novo redetermination proceedings, Docket Nos. 836–R and 837–R in The Tax Court of the United States.

(f) Waiver of any and all claims of defendant against plaintiff.

(g) The $30,000.00 payment due on January 1, 1952.

20. From January 16, 1951, until, at least, March 23, 1951, inclusive, defendant was unable, in any event, to tender or deliver to plaintiff, and knew that it was unable to tender or deliver to plaintiff, a mortgage of any kind on the 510 shares of Hold-Stitch Fabric Machine Company stock owned by defendant.

21. By telegram of March 23, 1951, and by confirming letter of March 23, 1951, which was received in due course, by defendant, plaintiff rescinded the compromise agreement relating to defendant's renegotiation liabilities for the fiscal years ending November 30, 1945, and November 30, 1946, arising from the Attorney General's January 22, 1951, acceptance of defendant's January 16, 1951, written offer in compromise, as amended by defendant's subsequent verbal supplements thereto.

22. With regard to the payments to plaintiff set forth in defendant's offer in compromise of January 16, 1951, as amended by defendant's subsequent verbal supplements thereto, defendant tendered or delivered to plaintiff the following payments, in the form of checks, on the following dates:

(a) $20,500.00—January 26, 1951
(b) 55.48—February 12, 1951
(c) 672.60—February 26, 1951
(d) 688.55—March 30, 1951
(e) 680.00—April 27, 1951

(f)   683.45—June 1, 1951
(g)   675.07—July 3, 1951
(h)   1,178.34—July 30, 1951
(i)   1,173.26—August 30, 1951
(j)   1,162.74—September 27, 1951
(k)   1,163.07—November 2, 1951
(l)   1,152.88—December 3, 1951

23. Defendant's tendered payments of $675.07, due July 1, 1951, of $1,163.07, due November 1, 1951, and of $1,163.07, due December 1, 1951, were tendered and delivered to plaintiff after the specified due dates, that is, on July 3, 1951, November 2, 1951, and December 3, 1951, respectively.

24. Each check tendered by defendant to plaintiff from January 26, 1951, to December 3, 1951, inclusive, was returned by plaintiff to defendant, intact, uncashed, and undeposited, on the following dates:

(a)   $20,500.00—March 23, 1951
(b)   55.48—March 23, 1951
(c)   672.60—March 23, 1951
(d)   688.55—March 30, 1951
(e)   680.00—May 9, 1951
(f)   683.45—June 5, 1951
(g)   675.07—July 10, 1951
(h)   1,178.34—October 17, 1951
(i)   1,173.26—October 17, 1951
(j)   1,162.74—October 22, 1951
(k)   1,163.07—November 8, 1951
(l)   1,152.88—December 10, 1951

25. The Renegotiation Act of 1942, as amended, is silent regarding the charge of interest on renegotiation liabilities owed by renegotiated contractors or subcontractors to plaintiff.

26. The only defenses asserted by defendant to the Court in this action are:

(a) That an executed Accord and Satisfaction exists between plaintiff and defendant regarding defendant's renegotiation liabilities for its fiscal years ending November 30, 1945, and November 30, 1946.

(b) That the granting of judgment in this action, in accordance with the allegations and prayer of the Complaint, as amended, during the pendency of defendant's de novo redetermination proceedings in The Tax Court of the United States, is a violation, in terms of procedural due process, of the due process provision of the Fifth Amendment of the Constitution.

Conclusions of Law

1. There is no executed Accord and Satisfaction between plaintiff and defendant with regard to defendant's renegotiation liabilities for its fiscal years ending November 30, 1945, and November 30, 1946.

2. The Renegotiation Act of 1942, as amended, is constitutional.

3. The granting of judgment in favor of plaintiff, in accordance with the allegations and prayer of the Complaint, as amended, during the pendency of defendant's de novo redetermination proceedings in The Tax Court of the United States, does not violate, in any manner, the Fifth Amendment of the Constitution.

4. Interest may be charged on renegotiation liabilities arising under the Renegotiation Act of 1942, as amended, and the rate of such interest, if any, may be fixed, in its discretion, by this Court.

5. Based on the foregoing Findings of Fact, this Court fixes three per cent (3%) per annum as a reasonable rate of interest to be charged defendant in this action.

6. With regard to its fiscal year ended November 30, 1945, defendant owes to plaintiff, and plaintiff is entitled to recover from defendant in this action, the net principal sum of $209,926.66, together with interest thereon, at the rate of three per cent (3%) per annum, from and including November 4, 1948, to and including date of entry of judgment in this action.

7. With regard to its fiscal year ended November 30, 1946, defendant owes to plaintiff, and plaintiff is entitled to recover from defendant in this action, the net principal sum of $194,504.30, together with interest thereon, at the rate

of three per cent (3%) per annum, from and including November 20, 1948, to and including date of entry of judgment in this action.

8. Plaintiff is entitled to entry of judgment against defendant for the sum of $404,430.96, together with interest on the sum of $209,926.66, at the rate of three per cent (3%) per annum, from and including November 4, 1948, to and including date of entry of such judgment and also together with interest on the sum of $194,504.30, at the rate of three per cent (3%) per annum, from and including November 20, 1948, to and including date of entry of such judgment, and for the costs of this action.

Judgment will be entered accordingly.