**AMERICAN TEXTILE MACHINE CORP., Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 12184.

United States Court of Appeals, Sixth Circuit.

March 25, 1955.

Judson Harwood, Nashville, Tenn., Cecil Sims, Nashville, Tenn., on brief for appellant.

Alan S. Rosenthal, Washington, D. C., Warren E. Burger, Samuel D. Slade,

T. S. L. Perlman, Washington, D. C., Fred Elledge, Jr., Nashville, Tenn., on brief for appellee.

Before SIMONS, Chief Judge, and MILLER and STEWART, Circuit Judges.

MILLER, Circuit Judge.

The United States brought this action against the appellant, American Textile Machine Corporation, under Sec. 403(c) (2) of the Renegotiation Act as amended, 50 U.S.C.A.Appendix, § 1191(c) (2), to recover amounts determined by the War Contracts Price Adjustment Board to have been excessive profits realized by appellant on Government contracts during the fiscal years ended June 30, 1945 and June 30, 1946. The District Judge entered judgment against the appellant in the amounts of $209,926.66 and $194,-504.30, with 3% interest, for the 1945 and 1946 years respectively, from which this appeal was taken.

The complaint, filed on January 9, 1951, set out the renegotiation proceedings, the determination by the Board of the excessive profits, the demand of payment, and appellant's failure to comply therewith. Appellant's answer admitted the unilateral determinations by the Board and that it had made no payment thereon, but denied the correctness and validity of such determinations, and alleged there was no indebtedness due from it to the Government, except as provided by a contract of compromise and settlement entered into between it and the Government on January 22, 1951, following the filing of the complaint herein, which it pleaded as "an accord and satisfaction" of the original claims asserted by the Government against it in this action. The answer stated that the appellant "has at all times been ready, willing and able to perform its obligations under said settlement agreement, and here and now offers to do so, but that the Government on March 23, 1951 arbitrarily and illegally elected to rescind the compromise settlement agreement and to enforce its demands as set out in the complaint." In rejecting this defense

the District Judge made the following findings of fact.

Following the Board's determinations of excess profits, the appellant on November 30, 1948 filed petitions in the Tax Court for *de novo* redetermination of the alleged amounts, and such redetermination proceedings, after issue was joined by the Government, were still pending. On January 16, 1951, appellant submitted to the Attorney General of the United States a written offer to compromise its liability for the two years in question, which offer with several verbal supplements thereto was accepted by the Attorney General on January 22, 1951. The terms of the compromise settlement were: appellant agreed (1) to pay appellee the total amount of $58,000 as follows: $20,000 upon receipt of the acceptance of the offer, $500 on the 1st of each month from February 1951 through July 1951, $1,000 on the first of each month from August 1951 through December 1951, and $30,000 on January 1, 1952, with interest on unpaid balances at 6% per annum on the first of each month; (2) to waive all claims against appellee and to execute necessary forms required by appellee; (3) to dismiss its *de novo* redetermination proceedings in the Tax Court; (4) to secure the payments provided above by a mortgage of its plant and equipment and 510 shares of Hold-Stitch Fabric Machine Company stock owned by it; (5) to pay delinquent federal taxes assessed against it by the Nashville, Tennessee Office, Bureau of Internal Revenue; and (6) to convey to appellee non-exclusive, royalty-free licenses on patents owned by Hold-Stitch Fabric Machine Company. Appellee agreed that upon acceptance of the offer and compromise the summons and complaint in this action would be dismissed without prejudice, and that it would request removal of any "stop payment orders" against the appellant.

By telegram of March 23, 1951, the appellee rescinded the compromise agreement. At that time the appellant had mailed to appellee its check for $20,500 on January 26, 1951, its check for $55.48 on February 12, 1951, and its check for $672.60 on February 26, 1951. These checks were returned uncashed by appellee by letter of March 23, 1951. Appellant had not tendered or delivered to appellee its mortgage on its plant and equipment, the 510 shares of Hold-Stitch Fabric Machine Company stock as a pledge on the indebtedness, the non-exclusive, royalty-free license patents owned by Hold-Stitch Fabric Machine Company, and its waiver of all claims against the appellee. Nor had it dismissed its *de novo* redetermination proceedings in the Tax Court or paid the delinquent federal taxes assessed against it by the Nashville, Tennessee Office, Bureau of Internal Revenue. The District Judge also found that from January 16, 1951 until March 23, 1951 inclusive the appellant was unable to tender or deliver to appellee a mortgage of any kind on the 510 shares of Hold-Stitch Fabric Machine Company stock. Other checks sent by appellant after March 23 through December 3, 1951 were returned uncashed by appellee. See 119 F.Supp. 253.

The District Judge ruled that there was no executed accord and satisfaction between the appellant and appellee; that the Renegotiation Act of 1943 as amended was constitutional; that the granting of a judgment during the pendency of the *de novo* redetermination proceedings in the Tax Court did not violate the Fifth Amendment to the Constitution; and that the appellee was entitled to recover the net principal sums found to be excessive profits by the War Contracts Price Adjustment Board. Judgment was entered accordingly.

The only question presented by appellant on this review is the effect of the compromise agreement of January 22, 1951. In rejecting appellant's defense the District Judge expressed the view that the defense of accord and satisfaction depended upon a settlement being reached and carried out in full, and that; while an agreement had been reached between the parties which represented the accord, such agreement had not been car-

ried out and satisfaction of the accord was therefore lacking, and that the defense of accord and satisfaction was accordingly not a valid one. Appellant contended that although the evidence failed to show an accord and satisfaction the compromise settlement was a valid and enforceable agreement which was a bar to the action and attempted to obtain a ruling from the District Judge on this contention. The District Judge declined to make any express ruling in addition to the ruling that he found the issue of accord and satisfaction in favor of the appellee.

Appellant strongly stresses the refusal of the District Judge to make an express ruling on the effect of the compromise settlement after ruling against the appellant on the issue of accord and satisfaction. It claims that it was entitled to have a ruling on such an issue raised by the pleadings. The District Judge was apparently of the view that the issue was not raised by the pleadings or had been waived by counsel, and that his ruling on the issue of accord and satisfaction was sufficient. In our opinion, this difference involves form only, rather than substance. Passing for the moment whether, for the purposes of this case, there is any substantial difference between the phrases "accord and satisfaction" and "compromise and settlement," it seems clear that the entry of the judgment in favor of appellee was in substance a rejection of whichever of the two defenses, or both of them, was presented by the pleadings and evidence. The evidence introduced was applicable to both defenses.

With respect to the pleadings, we think that although the appellant's answer used the phraseology of "accord and satisfaction," it also pleaded the compromise settlement itself as a bar to the action. In numerous places it refers to the "compromise" and "settlement" and specifically alleges "that said settlement became and remains binding upon the plaintiff so as to eliminate all claimed liability against the defendant except for that expressly set out and agreed upon in said compromise settlement agreement." Although appellant's counsel likewise used the phrase "accord and satisfaction" in his opening statement to the Court, it is clear from the colloquy between Court and counsel that the defense of "settlement" was never abandoned. Accordingly, the question for decision, is, regardless of the terminology of "accord and satisfaction" and "compromise and settlement," did the contract of January 22, 1951 between the appellant and the Government constitute a bar to the prosecution of the claims involved in this action after the Government notified appellant of its rescission of the agreement.

■ Jurisdiction in this case does not rest upon diversity of citizenship. While in certain types of non-diversity cases, state law may afford an appropriate guide, it is not controlling. Wichita Royalty Co. v. City National Bank, 306 U.S. 103, 110, 59 S.Ct. 420, 83 L.Ed. 515. The doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, has not been extended beyond diversity cases. D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, concurring opinion of Justice Jackson, at page 465, 62 S.Ct. 676, at page 683, 86 L.Ed. 477; Clearfield Trust Co. v. United States, 318 U.S. 363, 366–367, 63 S.Ct. 573, 87 L.Ed. 838; United States v. Allegheny County, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209; United States v. Standard Oil Co., 332 U.S. 301; Deupree v. Levinson, 6 Cir., 186 F.2d 297, 301; Fielding v. Allen, 2 Cir., 181 F.2d 163, 167–168; Ferguson v. Reed, D.C.E.D.Pa., 44 F.Supp. 387, 389.

■■ The general rule appears well settled that a contract in the nature of accord and satisfaction does not discharge the original obligation unless and until the accord is followed by the satisfaction therein provided, and if the debtor fails to carry out the accord the creditor can enforce either the original obligation or the new accord. An exception to the general rule is that the parties may substitute the accord for the pre-existing obligation, and if such purpose is clearly shown, the pre-existing obliga-

tion is discharged and is not revived by the debtor's breach of the accord. Wyatt v. New York, O. & W. R. Co., 2 Cir., 45 F.2d 705, 708; Archibald McNeil & Sons Co. v. United States, D.C., 1 F.2d 39, see cases at page 41; Davidoff v. Thomas A. Edison, Inc., 2 Cir., 45 F.2d 565, 568; Restatement, Contracts, Sec. 417, 418. The District Judge was correct in so much of his ruling that held that the accord without satisfaction did not extinguish appellee's claims in this action. The contract expressly provided that if the appellant defaulted on any terms and conditions of the offer in compromise the entire balance of appellee's renegotiation claim would become immediately due and payable. In keeping with that purpose, appellee's obligation was upon acceptance of the offer to dismiss the present proceeding "without prejudice."

 But it does not follow that, in the absence of default on the part of the debtor, the creditor may at will rescind the accord and proceed to enforce the original obligation. If the accord is supported by consideration, and is otherwise a valid contract, it cannot be validly repudiated except for cause. Although it does not extinguish the pre-existing obligation, it suspends the enforcement of it until it has been legally abrogated. Archibald McNeil & Sons Co. v. United States, supra, D.C., 1 F.2d 39, 41–43, affirmed, 3 Cir., 10 F.2d 1016; In re Clarence A. Nachman Co., 2 Cir., 6 F.2d 427, 430; In re Kellett Aircraft Corp., 3 Cir., 173 F.2d 689, 692; Ohlendiek v. Schuler, 6 Cir., 299 F. 182, 189; Restatement, Contracts, Sec. 417(a). Like any other valid contract, it cannot be cancelled or disregarded at the pleasure of one of the parties. Andrews v. United States, 115 F.Supp. 901, 126 Ct.Cl. 571; Albin v. United States, 120 F.Supp. 763, 128 Ct.Cl. 204.

 The telegram of March 23, 1951 from appellee said—"for reasons explained to you at conference on Wednesday, March 21, 1951, settlement agreement entered into or about January 22, 1951 and relating to liability of American Textile Machine Corporation for exces-sive profits is hereby rescinded." The evidence showed that the reason for this action was because the appellee claimed that the settlement payment of $58,000 was the result of misrepresentation by appellant of the value of its assets, in that the appellant about February 17, 1951 filed a sworn loan application for a loan with the Reconstruction Finance Corporation in the amount of $150,000.00 in which the value of the fixed assets of appellant was substantially greater than represented to appellee. Appellant makes two answers to this charge, (1) appellee's own appraisers visited the plant and fixed its liquidation value, which was the basis for the $58,000 settlement, and (2) the application to the Reconstruction Finance Corporation was on the basis of a going concern with government contracts in the making, rather than its liquidation value. This issue was not developed by the evidence due to the ruling on the issue of accord and satisfaction, and the District Judge did not include it in his Findings of Fact and Conclusions of Law. On the present review the contract of settlement must be considered as a validly executed contract. Jack Mann Chevrolet Co. v. Associates Inv. Co., 6 Cir., 125 F.2d 778, 786; Very v. Levy, 13 How. 345, 361, 14 L.Ed. 173.

 The District Judge included in his findings several facts showing non-performance of the accord. But non-performance is not the same as a breach. Time of performance may not have accrued or failure to perform may be excusable. It appears from his conclusions of law that he relied upon such facts as showing that the accord was not satisfied rather than as showing that the accord was breached. Conclusion No. 1 reads: "There is no executed accord and satisfaction between plaintiff and defendant. * * *" There is no ruling that the accord was breached. Appellant's letter of January 16, 1951 submitting its compromise offer to appellee did not provide any specific time for the performance of the accord other than the dates for the installment payments. Appellee's telegram of January 23, 1951 said—"On

January 22, 1951 Attorney General accepted the aforesaid offer. * * * Letter enclosing waiver and patent license forms follows." A letter from the Attorney General, dated January 30, 1951 read in part: "The check will be retained, pending the receipt and approval of the various documents which are to be submitted. * * * The waiver and assignment of royalty forms are being prepared and will be sent to you in a few days." The evidence shows that the waiver and assignment of royalty forms were never received. In addition to the delay in this respect being the result of appellee's own action, it seems clear from the evidence above reviewed relative to the cause of the notice of rescission that the appellee had not complained about any delay in performance and had never treated it as a breach of the accord. The telegram of rescission made no reference to any delay or failure to perform. The present contention advanced by appellee at the time of trial seems much in the nature of an afterthought. Appellant also contends that the finding of the District Judge that appellant was unable to mortgage the 510 shares of Hold-Stitch Fabric Company stock was an erroneous interpretation of statements by a witness that the stock was tied up in a lawsuit. The witness also stated that the stock would have been available for inclusion in the mortgage by settlement of the lawsuit and that the suit was actually settled before the trial of this action. It is contended that the stock would have been made available if given reasonable time to make the arrangements. In any event, the evidence presented the issue of whether the delay in performance was unreasonable or unwarranted to the extent of constituting a breach of the accord. We do not construe the Findings of Fact and Conclusions of Law as passing on this issue.

Appellee's contention that there was a default in the tender of payments after March 23, 1951 has no merit. Further performance, or tender of further performance, was not required after that date, since at that time appellee had given unequivocal notice that it had rescinded the contract. No tender is necessary when a contract has been definitely repudiated by the other party. Gaines & Sea v. R. J. Reynolds Tobacco Co., 171 Ky. 783, 789, 188 S.W. 847; Witt v. Dersham, 146 Mich. 68, 73–74, 109 N.W. 25; Clark v. Andrew, 5 Cir., 11 F.2d 958, 961.

We are of the opinion that the District Judge was in error in not giving effect to the compromise settlement agreement, even though it had not been performed. Unless shown that it was not a valid contract or that it has been breached by the appellant, as distinguished from non-performance, it stands as a bar to the prosecution of the present action.

The judgment is reversed and the case remanded to the District Court for further proceedings consistent with the views expressed herein, with the right to both parties to introduce additional evidence on the issues herein involved.