**BOWATER NORTH AMERICA CORPORATION, Plaintiff,**

v.

**MURRAY MACHINERY, INC., Murray Southern, Inc., Alabama Industrial Fabricators, Inc., Logan R. Ritchie, Jr., and Edgardo Manuel Diaz, Defendants,**

and

**MURRAY MACHINERY, INC. & Murray Southern, Inc., Third-Party Plaintiffs,**

v.

**J.M. FOSTER, INC., Harry Tobey and Hoff and Associates, Third-Party Defendants.**

Civ. No. 1–82–520.

United States District Court, E.D. Tennessee, S.D.

May 4, 1984.

Raymond R. Murphy, Jr., James R. Buckner, Miller & Martin, Chattanooga, Tenn., for plaintiff.

Logan R. Ritchie, Jr., Consulting Engineer, P.C.; W.B. Luther, Luther, Anderson, Cleary & Ruth, Chattanooga, Tenn., for J.M. Foster, Inc.

W. Neil Thomas, III, Thomas, Mann & Gossett, P.C., Chattanooga, Tenn., for third-party defendant Dr. Harry G. Tobey.

George L. Foster, Hall, Haynes, Lusk & Foster, Chattanooga, Tenn., for third-party defendant pro se Hoff & Associates.

Edgardo Manuel Diaz, pro se.

R. Vann Owens, Leitner, Warner, Owens, Moffitt, Williams & Dooley, Chattanooga, Tenn., for Alabama Industrial Fabricators, Inc.

W. Ferber Tracy, and Mark Ramsey, Spears, Moore, Rebman & Williams, Chattanooga, Tenn., Ruder, Ware, Michler & Forester, S.C., Wausau, Wis., for Murray Machinery, Inc. and Murray Southern, Inc.

## MEMORANDUM

MILBURN, District Judge.

This cause is presently before the Court for interpretation of a Settlement Agreement and Release (hereinafter, agreement) which was prepared by the parties to settle

and compromise disputes arising out of the purchase of a long log boom by Bowater North America Corporation (hereinafter, Bowater) from Murray Machinery, Inc. and Murray Southern, Inc. (hereinafter, Murray). The present dispute is over the method of calculating a cash settlement and future credits to be provided to Bowater in its purchases of Murray products.

The part of the agreement with which the present controversy is concerned reads as follows:

WHEREAS, Murray has agreed to pay to Bowater the sum of Two Hundred Fourteen Thousand and No/100 Dollars ($214,000) in cash; has agreed to sell to Bowater such of its products and replacement parts from Murray's product line as Bowater shall, from time to time, select and has agreed to provide Bowater credit of Two Hundred Eighty-Six Thousand and No/100 Dollars ($286,000) as against said future purchases *which are to be credited at 10% off Murray's standard sales price for like products;* and

WHEREAS, Bowater has agreed to make said purchases as soon as possible and in no event more than thirty-six (36) months of the date of signing. (emphasis added)

WHEREAS, Bowater and Murray agree that any dispute regarding the credits to be provided under this agreement shall be resolved in accordance with and pursuant to the construction industry arbitration rules of the American Arbitration Association and that any such determination shall be binding;

NOW, THEREFORE, for and in consideration of the mutual promises and releases given by the parties to this Agreement and in consideration of the payment by Murray, Alabama and Foster to Bowater of the total amount of Two Hundred Sixty-Four Thousand Dollars ($264,000) in cash and the agreement by Murray to sell its products to Bowater and to provide future credits against such sales in the amount of Two Hundred Eighty-Six Thousand Dollars ($286,-000) as set forth above, the parties to this agreement hereby agree as follows: . . .

Bowater contends that the language "which are to be credited at 10% off Murray's standard sales price for like products" means that Bowater is going to get its next $286,000 worth of parts and equipment purchases from Murray without charge. Furthermore, the price Bowater will be charged for this equipment, for the purpose of applying the credits against the price, will be 10% less than Murray's list price. For example, if Bowater buys a machine with a $300,000 list price, the amount of the credit would be ($300,000 – $30,000 = $270,000) $270,000.

On the other side, Murray contends the disputed language means that the 10% credit is accumulated until $286,000 is attained. For example, if Bowater buys a machine with a $300,000 list price the amount of the credit would be $30,000 and Bowater would pay $270,000 and have ($286,000 – $30,000 = $256,000) $256,000 worth of credit left for the next machine purchase. The difference between purchasing $317,777.77 of Murray machinery at list price for no charge ($317,777.77 – 10% = $286,000) and between purchasing $2,860,000 of Murray machinery for $2,574,000.00 ($2,860,000.00 – 10% = $2,574,000.00) is over 2½ million dollars.

▮ The dispute over the meaning and method of calculation of the credits in this case is real. It is not the result of mistake. Mistake exists, in a legal sense, where a person acting upon some erroneous conviction, either of law or fact, executes some instrument, or does some act, or omits to do some act, which but for that erroneous conviction, he would not have executed, done or omitted. *State ex rel. Mathes v. Gilbreath,* 181 Tenn. 498, 504, 181 S.W.2d 755 (Tenn.1944). The parties agreed to the language used and executed a document; they presently disagree over the meaning of the language describing the calculation of the credits.

▮ As a matter of black letter law arbitration is a matter of contract, and the

contours of the arbitrator's authority in a given case are determined by reference to the arbitral agreement. Parties to such an agreement cannot be required to submit to arbitration any matter that they did not agree would be subject to that manner of dispute resolution. *Davis v. Chevy Chase Financial, Ltd.,* 667 F.2d 160, 165 (D.C.Cir. 1981). Plaintiff argues that the only reasonable conclusion is that the language of the arbitration paragraph is only applicable to disputes which might involve the prices of Murray products. Plaintiff argues:

> There is no question but that Bowater is to receive $286,000 in credit. That as a fact is not controverted. The provision relied on by Murray has to do only with the price which Bowater is to be charged, i.e., 10% off list price, it does not deal with the credit Bowater is to receive.... Thus, Bowater believes there is no dispute within the terms of the arbitration provision for the simple reason that there is no dispute as to the amount of the credit which Bowater is to receive. Likewise, there is no dispute as to the price of Murray's products at this point and the only language relied on by Murray has to do with the price charged.

Plaintiff's brief filed March 12, 1984, at 6.

■ The agreement provides internally for disputes which involve credits. The agreement states:

> WHEREAS, Bowater and Murray agree that *any dispute regarding the credits* to be provided under this agreement shall be resolved in accordance with and pursuant to construction industry rules of the American Arbitration Association and that any such determination shall be binding;

> Contrary to the plaintiff's characterization of this dispute as a matter of price change, not a matter of how credit is to be applied, the Court believes that the dispute is over the meaning of the language describing the calculation of the credits. Therefore, this dispute must be submitted to arbitration because the language of the settlement agreement states that *"any dispute regarding the credits* to be provided

under this agreement shall be resolved in accordance with ... arbitration." The plain meaning of the agreement requires disputes over credits to be arbitrated.

An appropriate order will enter.