773 F.2d 71
 BOWATER NORTH AMERICA CORPORATION, Plaintiff-Appellant,
v.
MURRAY MACHINERY, INC., Murray Southern, Inc., Alabama
Industrial Fabricators, Inc., Logan R. Ritchie,
Jr., and Edgardo Manual Diaz, Defendants-Appellees,
and
MURRAY MACHINERY, INC., and Murray Southern, Inc.,
Third-Party Plaintiffs,
v.
J.M. FOSTER, INC., and Harry Tobey and Hoff Associates,
Third-Party Defendants-Appellees.
 No. 84-5418.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 6, 1985.
Decided Sept. 16, 1985.
 
 James R. Buckner, Miller & Martin, Raymond R. Murphy (argued), Chattanooga, Tenn., for plaintiff-appellant.
 Carl Ricciardi, Ruder, Ware, Michler & Forester, Wausau, Wis., Ferber W. Tracy, (argued), Spears, Moore, Rebman & Williams, Joe E. Manuel (argued), Leitner, Warner, Owens, Moffitt, Williams & Dooley, Don W. Poole, Bean, Poole, Lawrence & Thornbury, Chattanooga, Tenn., Logan R. Ritchie, Jr., Edgardo M. Diaz, Birmingham, Ala., W. Neil Thomas, Thomas, Mann & Gossett, George L. Foster, Hall, Haynes, Lusk & Foster, Richard R. Ruth, Jr., Luther, Anderson, Cleary & Ruth, James Milam (argued), Chattanooga, Tenn., for defendants-appellees.
 Before KEITH and MARTIN, Circuit Judges, and TAYLOR,* District Judge.
 KEITH, Circuit Judge:
 
 
 1
 The plaintiff Bowater North American Corporation (Bowater) appeals from an order of dismissal entered on May 4, 1984 by the United States District Court for the Eastern District of Tennessee, 604 F.Supp. 821, then District Judge H. Theodore Milburn presiding.
 
 
 2
 In the action below, Bowater had filed suit, alleging negligent breach of contract and breach of warranty, for defects in a long log crane. The crane was designed by defendants Logan Ritchie (Ritchie) and Edgardo Diaz (Diaz); fabricated, in part, by defendant Alabama Industrial Fabricators, Inc. (AIF); and sold by defendant Murray Machinery, Inc. and/or Murray Southern, Inc. (Murray). The district court dismissed the action with prejudice based upon a settlement agreement between the parties. On appeal, plaintiff seeks reversal of the dismissal order and remand to the district court for a jury trial on the factual issues, including the alleged defense of accord and satisfaction. For the reasons stated below we affirm the order of the district court.
 
 FACTS
 
 3
 Bowater is a manufacturer of newsprint with an office and mill located in Calhoun, Tennessee. In 1980, Bowater ordered a long log crane from Murray. During installation, Bowater experienced various failures of the crane, which culminated with a suit being filed on November 29, 1982, against Murray, Ritchie and AIF. Subsequently, defendant Diaz was brought in by way of an amended complaint. The suit demanded a jury trial and sought damages for the expenses incurred in repairing the crane and for profits lost during the period the crane was inoperable.
 
 
 4
 After various proceedings, discussions were held between Bowater and the defendants (chiefly Murray) in an attempt to settle the case. Counsel for Bowater and Murray exchanged several draft agreements and had numerous conversations concerning a settlement. As a result of a meeting held on December 9, 1983, a document styled Settlement Agreement was drafted and executed by Murray, Bowater, AIF, and Harry Toby (third-party defendant) at various times thereafter. See Jt.App. at 90-129.
 
 
 5
 In pertinent part, the settlement agreement provided:
 
 
 6
 WHEREAS, Murray has agreed to pay to Bowater the sum of Two Hundred Fourteen Thousand and No/100 Dollars ($214,000) in cash;[1] has agreed to sell to Bowater such of its products and replacement parts from Murray's product line as Bowater shall, from time to time, select and has agreed to provide Bowater credit of Two Hundred Eighty-Six Thousand and No/100 Dollars ($286,000) as against said future purchases which are to be credited at 10% off Murray's standard sales price for like products; and
 
 
 7
 WHEREAS, Bowater has agreed to make said purchases as soon as possible and in no event more than thirty-six (36) months of the date of signing.
 
 
 8
 WHEREAS, Alabama and Foster have agreed to pay Twenty-Five Thousand and No/100 Dollars ($25,000) each to Bowater; and
 
 
 9
 WHEREAS, Bowater and Murray agree that any dispute regarding the credits to be provided under this agreement shall be resolved in accordance with and pursuant to the construction industry arbitration rules of the American Arbitration Association and that any such determination shall be binding;
 
 
 10
 NOW, THEREFORE, for and in consideration of the mutual promises and releases given by the parties to this Agreement and in consideration of the payment by Murray, Alabama and Foster to Bowater of the total amount of Two Hundred Sixty-Four Thousand Dollars ($264,000) in cash and the agreement by Murray to sell its products to Bowater and to provide future credits against such sales in the amount of Two Hundred Eighty-Six Thousand Dollars ($286,000) as set forth above, the parties to this agreement hereby agree as follows:
 
 
 11
 1. (a) All parties hereto mutually release and discharge all other parties hereto and their respective officers, employees, members of their Board of Directors, their heirs, successors and assigns, from all claims of any kind and character, all actions, causes of action, liens, debts and demands which arise out of, in connection with, or result from or relate in any manner to, the above referenced litigation and/or the design, purchase, fabrication, construction, erection, operation and repair of the forty-five (45) ton, one hundred forty (140) foot radius long long boom crane which is the subject matter of the above-referenced litigation and as set forth in the various pleadings including ...
 
 
 12
 Jt.App. at 118-20 (Settlement Agreement at 2-4).
 
 
 13
 As called for in the agreement, Murray began making the cash payments to plaintiff. The first cash payment of $107,000 was made on December 28, 1983, together with a bank letter of credit to plaintiff guaranteeing payment of the second and final $107,000 installment, together with interest, on or before March 31, 1984. The initial cash payment was accepted and negotiated by plaintiff. Likewise, both Foster and AIF each performed their obligation to pay $25,000 to Bowater under the settlement agreement. Bowater also accepted those payments.
 
 
 14
 In February 1984, Murray was advised by Bowater that its interpretation of the credits provision of the agreement differed from Murray's interpretation of that provision. Murray contended that the agreement provided for a ten percent credit against the price of the equipment Bowater purchased until the accumulated credit totaled $286,000. Under this interpretation Bowater would be required to spend over $2.5 Million [$2,860,000 - 10% (286,000) = $2,574,000] in order to accumulate a $286,000 credit. However, Bowater contends that the agreement entitles it to receive the next $286,000 of merchandise purchased from Murray free of charge and that the price charged for the merchandise would be ten percent off the standard price. Under this interpretation, Bowater would spend no cash and would receive over $317,000 worth of merchandise free at a reduced price of $286,000 [$317,777.77 - 10% = $286,000]. Bowater rescinded the agreement based on the differing interpretations of the credits clause.
 
 
 15
 The trial court had entered an order of dismissal on February 21, 1984, based upon the parties having advised it in December of 1983 that they had reached a settlement. Plaintiff filed a motion to set aside the order of dismissal and to amend the judgment and a motion to set the case for trial. After a hearing on March 5, 1984, the court suspended its previous order of dismissal to allow the parties time to file anything else they felt germane for the court's consideration. Thereafter, on May 4, 1984, the trial court entered its order, with supporting memorandum, ruling that the February 21, 1984 order of dismissal stood and that the cause remained dismissed. Bowater v. Murray Machinery, 604 F.Supp. 821 (E.D.Tenn.1984). Plaintiff Bowater then appealed to this Court claiming two issues for review. First, Bowater asserts that the district court erred by dismissing the case without a jury trial on the merits of the factual issues, thus denying plaintiff its constitutional right to a trial by jury. Second, Bowater contends that the district court violated Rule 52 of the Federal Rules of Civil Procedure by failing to find the facts specially and taking action which was "clearly erroneous" in light of the uncontroverted evidence.
 
 DISCUSSION
 I.
 
 16
 In general, the right to jury trial only attaches when there is a question of fact. Bowater asserts that there was a mutual mistake of fact by the parties during the negotiation of the settlement agreement which justifies the need for a jury trial. Bowater asserts five errors identified in the law of contracts as a basis for its claim that there is a mutual mistake of fact which requires a jury trial. Bowater contends that there is a factual question concerning whether the settlement agreement resulted from a definite offer and acceptance or meeting of the minds. Bowater also asserts that there is a question of whether there was a mutual mistake, a mistake induced by fraud, or a mistake that Murray had reason to know of. Finally, Bowater contends that whether the contract was repudiated and the parties intended the settlement agreement to be an executory accord or an accord and satisfaction also presents a question of fact. Initially, we will consider the question of offer and acceptance.
 
 
 17
 It is very clear that there was a proper offer and acceptance of the settlement agreement herein. The negotiations over the settlement agreement occurred over a period of several months. All parties were represented by capable counsel and had sufficient time to familiarize themselves with the terms of the agreement. The agreement contained all necessary elements including valuable consideration. Under the terms of the agreement, Bowater gave up claims against Murray and the other defendants for breach of underlying agreement in return for cash payments and credits against future purchases of Murray's products. Defendants' performance under the contract began as scheduled. Murray made the first $107,000 cash payment to plaintiff in December 1983 and caused a letter of guarantee to be forwarded to Bowater for the other $107,000 payment. In addition, both AIF and Foster executed their substitute performance by paying Bowater $25,000 each. All payments were accepted by plaintiff. Given the length and the beginning of performance, it seems clear that there was an offer, acceptance and a meeting of the minds. There was no basis upon which to void the settlement agreement.
 
 
 18
 The adequacy of the contract formation is further supported by the lack of mistakes in the agreement, there was no mutual mistake nor was there mistake due to fraud which only one of the parties would have known about. The instant dispute over the meaning and method of calculating the credits due Bowater is not the result of mistake. Tennessee courts define "mistake" as an unconscious ignorance of forgetfulness of a fact, past or present, material to the contract, which exists in a legal sense where a person, acting upon some erroneous conviction either of law or fact, executes some instrument, does some act or omits to do some act which, but for the erroneous conviction, would not have been executed, done or omitted. State ex rel. Mathes v. Gilbreath, 181 Tenn. 498, 181 S.W.2d 755, 757 (1944); Metropolitan Life Insurance Company v. Humphrey, 167 Tenn. 421, 70 S.W.2d 361, 362 (1934).
 
 
 19
 Such a mistake is not present in this case. There is no erroneous issue of fact or law material to the contract which caused either party to execute the settlement agreement. The parties extensively negotiated and freely entered into a comprehensive settlement agreement which contained the language that plaintiff now asserts to be the basis of mutual mistake. As the district court stated below, "The parties agreed to the language used and executed a document; they presently disagree over the meaning of the language describing the calculation of the credits." District Court Memorandum Opinion, Joint Appendix at 294, 297. Under the Tennessee definition stated above, a disagreement over the meaning of the properly negotiated credits provision does not constitute a mistake of any type.
 
 
 20
 Accordingly, the trial court was free to interpret and enforce the contract. In so doing, the trial court did not decide any issue of fact regarding the disputed credits provision. Rather, since the intention of the parties inherent in the reduction of the settlement negotiations into the written settlement agreement was evident, the trial court merely enforced the agreement as written by leaving the parties to the arbitration forum for resolution of the credits dispute. Plaintiff did not and does not complain of the presence of the credits provision in the agreement. Rather, plaintiff complains that its interpretation of the language of the credits provision is different from Murray's interpretation. That is no mistake. It is a disagreement the possibility of which was contemplated in the agreement itself by the insertion of the arbitration provision.
 
 
 21
 The last factual issue alleged by plaintiffs is that it is unclear whether the settlement agreement was an accord and satisfaction. An accord and satisfaction is a method of discharging a contract or settling a cause of action arising either from contract or tort by substituting for such contract or cause of action an agreement for the satisfaction thereof and the execution of such substituted agreement. Union Indemnity Co. v. United States for the use of Page Engineering Company, 74 F.2d 645, 646-47 (6th Cir.1935). The "accord" is the agreement to substitute the new obligation for the underlying cause of action or contract, while the "satisfaction" is the execution of the agreement. Tullahoma Concrete Pipe Co. v. Pyramid Concrete Pipe Co., 46 Tenn.App. 559, 330 S.W.2d 578, 582 (1960). The tendering of performance as called for in the agreed accord makes it impossible for the creditor to rescind the agreement, except upon breach, see American Textile Machine Corp. v. United States, 220 F.2d 584, 587-88 (6th Cir.1955); the performance extinguishing the underlying obligation. Id. Indeed, some cases have suggested that even without performance having been tendered, it may appear the new agreement is itself meant to replace the underlying obligation, so that obligation is not revived by breach of the accord. 220 F.2d at 588; Poster v. Andrews, 26 Tenn.App. 86, 167 S.W.2d 1001, 1002-03, rev'd on other grounds 182 Tenn. 671, 189 S.W.2d 580 (1943); Arrowwood v. McMinn County, 173 Tenn. 562, 121 S.W.2d 566, 569 (1938). In any event, the remedy for breach of the substituted agreement is upon the substituted agreement, not the original claim. Douglas v. General Motors Acceptance Corporation, 205 Tenn. 432, 326 S.W.2d 846, 850 (1959).
 
 
 22
 The settlement agreement here is clearly an Accord and Satisfaction. The central intent of the agreement was to substitute the undertakings of the agreement for the claims asserted by plaintiff in the original litigation. The settlement agreement clearly embodies those substituted undertakings. The language of the settlement agreement regarding the payment terms of the consideration seems secondary to the primary purpose of the agreement, which is settlement of the underlying action. Any disputes regarding interpretation of the language of the agreement vis-a-vis the credit provision are expressly left to arbitration.
 
 
 23
 No dispute or allegation concerning the inclusion of the arbitration provision can be alleged. Plaintiff took part in the negotiation and drafting of the settlement agreement. Bowater was also represented by competent counsel during the course of the negotiations and drafting. Bowater caused the settlement agreement to be executed by a duly appointed representative and thereby freely assented to refer any disputes regarding the credits provision to arbitration.
 
 
 24
 Plaintiff relies on Browning v. Holloway, 620 S.W.2d 611 (Tex.Civ.App.1981), to support the argument that the trial court erred in rendering judgment without affording plaintiff a jury trial. However, we find Browning to be inapplicable to the case at bar as it is distinguishable both as to the facts and to the law applied. Browning, which arose under Texas law, dealt with an incomplete agreement, 620 S.W.2d at 616, under which none of the required performance had been offered. 620 S.W.2d at 616-17. The Texas Court of Civil Appeals considered the agreement in Browning simply to hold the underlying cause of action in abeyance pending the performance of the obligations arising out of the settlement agreement, terming the agreement "an executory accord", rather than an accord and satisfaction. 620 S.W.2d at 616. Additionally, since material terms were completely lacking in the Browning agreement, the assertion that it was an accord and satisfaction was further undercut. Id. The following language from Browning is germane to understanding the true holding of the case:
 
 
 25
 The consequences of terming this agreement an executory accord rather than an accord and satisfaction, is that, upon failure of a party to perform under an executory accord, the other party may treat the accord as repudiated and claim rights either under the new agreement or under the underlying cause of action. Had some performance been tendered, or had the agreement been so complete as to compel the conclusion that a replacement agreement was intended, plaintiffs would have been limited in their right to recover for breach of the contract and could not have sued on the original cause of action.
 
 
 26
 620 S.W.2d at 616-17 (footnote and citation omitted) (emphasis supplied).
 
 
 27
 In contrast to Browning, the settlement agreement here is complete in its terms. Also, as performance has been tendered and accepted, it rises to the level of being an accord and satisfaction. Thus, the instant case is distinguishable and is taken out of the purview of the undeveloped state of facts found in Browning. In further contrast to Browning, plaintiff's underlying claim is unliquidated. Thus, plaintiff is left to the remedies available to it, either by the terms of the agreement or by suit upon the agreement, not on the underlying cause of action. This conclusion is even more compelling when, as here, the agreement contains an arbitration provision. By enforcing the arbitration provision on its clear terms, no argument having been made about the interpretation of that section, the trial court simply left Bowater with the result of its bargain.
 
 
 28
 There is no doubt that the court has the inherent authority and equitable power to enforce agreements in settlement of litigation before it, Odomes v. Nucare, Inc., 653 F.2d 246, 252 (6th Cir.1981); United States v. Scholnick, 606 F.2d 160, 166 (6th Cir.1979); The Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir.1975), cert. denied, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976), even if that agreement has not been reduced to writing. Odomes v. Nucare, Inc., 653 F.2d at 252.
 
 
 29
 The trial court's action did not deprive plaintiff of any right to which it was entitled. Plaintiff had freely entered to the settlement agreement after extensively negotiating it with the advice and assistance of counsel. The agreement was entirely complete in its terms. The trial court correctly found it to be an agreement and recognized that plaintiff's interpretation of the credits provision, claimed to be mistake, was within the purview of the agreement as evidenced by the arbitration provision. Thus, only the correct interpretation of the contract, an issue of law, remained in question. Bank of Maryville v. Topping, 216 Tenn. 597, 393 S.W.2d 280, 284 (1965). Accordingly, there was no necessity for a jury trial, because resolution of an issue of law does not require the interpretation of a jury. Therefore, the trial court committed no error.
 
 II.
 
 30
 Plaintiff also asserts that the trial court erred in not finding facts specially, pursuant to Rule 52 of the Federal Rules of Civil Procedure. Rule 52(a) requires that "[i]n all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon...." It is obvious that Rule 52 is applicable by its own terms only to cases tried "upon the facts without a jury." In the instant case, the judgment of the trial court did not follow a trial upon the facts. Rather, the court merely entered judgment in accordance with the terms contemplated by the settlement agreement between the parties, and stated the bases for and consequences of that decision in the memorandum supporting the order. Thus, the ruling is in the nature of a judgment by consent, Kukla v. National Distillers Products Co., 483 F.2d 619, 621 (6th Cir.1973), and its entry is based upon the inherent powers of the federal courts to summarily enforce settlement agreements. United States v. Scholnick, 606 F.2d 160, 166 (6th Cir.1979). Rule 52 is thus inapplicable to the instant case.
 
 
 31
 Accordingly, the order of the district court is hereby affirmed.
 
 
 
 *
 Honorable Anna Diggs Taylor, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Murray and Bowater agreed that the $214,000 was to be paid in two installments: $107,000 was to be paid on or before December 27, 1983; at the same time, a letter of credit or guarantee from Murray's bank assuring payment of the remaining $107,000 on or before March 31, 1984, was to be delivered to Bowater. See Joint Appendix at 128