WALTER MACK PODOLECE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Podolece v. Commissioner
Docket No. 3054-89
United States Tax Court
T.C. Memo 1992-227; 1992 Tax Ct. Memo LEXIS 268; 63 T.C.M. (CCH) 2785; April 16, 1992, Filed *268 Decision will be entered under Rule 155. Thomas F. Mullen, for petitioner. Jack Klinghoffer and Michael S. Noble, for respondent. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)
6653
6653
6654
6661 [2]
(b)(1)
(b)(2)
1981
$ 148,628
$ 74,314
N/A
$ 11,385
N/A  1982
243,826
$ 121,913
[1]
23,736
$ 60,956
1983
405,402
202,701
[1]
24,834
101,351
1984
188,601
94,301
[1]
11,843
47,150
1985
159,229
79,615
[1]
9,122
39,807
Sec.
Sec.
6653(b)
6653(b)
(1)(A)
(1)(B)
1986
107,579
80,684
n1
5,203
26,895
1987
56,110
42,643
n1
3,398
14,029
The issues for decision are: (1) Whether petitioner received unreported taxable income in each of the years at issue; (2) whether respondent proved by clear and convincing evidence that petitioner is liable for the additions to tax for fraud *269 pursuant to section 6653(b); [1] or in the alternative, (3) whether petitioners are liable for additions to tax due to negligence or intentional disregard of the rules and regulations pursuant to section 6653(a); and (4) whether petitioner is liable for an addition to tax for underestimating liabilities pursuant to section 6654. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. Petitioner resided in Glendora, California, at the time he filed his petition. During the years in issue, petitioner's due dates for filing his 1982 through 1987 tax returns were extended. No extension was filed for tax year 1981. The return for tax year 1982 was timely filed; yet no returns were filed for tax years *270 1981 and 1983 through 1987 until around February 1989. On January 14, 1981, petitioner received a charter from the Universal Life Church, Inc., Modesto, California (ULC-Modesto). [2] Petitioner opened at least nine bank accounts under the name of the Universal Life Church-Glendora (hereinafter ULC). Petitioner had sole signatory power on all the ULC accounts. Money was contributed to the ULC accounts via interest-free "loans" from the receipts of Electronic Applications Company (EAC) and by friends of petitioner. Petitioner was the sole proprietor of EAC, a Schedule C business. Petitioner controlled all the records of EAC and personally prepared all returns and financial statements. *271 Petitioner offered as his books and records copies of his Form 1040 and attached Schedules C for each year at issue, and bank statements available for 1981, 1982, and 1983 only. He also offered balance sheets, income statements, and other financial records whose validity are in dispute. Respondent offered as evidence of petitioner's net worth EAC's financial statements which petitioner had given to the Department of Justice as evidence of his cash flow. These statements, i.e., balance sheets, income statement, etc., are referred to in this case as financial statements. This term is not meant as a determination of the truth or correctness of the statements, but is used solely for discussion purposes. During 1981, 1982, and 1983, petitioner had aggregate net bank deposits to the ULC accounts of $ 2,794,441 [3] which exceeded the aggregate net profits reported in his financial statements by $ 1,752,305. Of these amounts, deposits from EAC to ULC totaled $ 22,000 in 1981, $ 257,623 in 1982, and $ 112,050 in 1983. Many of petitioner's deposits were made in large amounts of cash; however, they generally would not exceed $ 10,000 a deposit per bank. In 1982, petitioner deposited *272 into the various ULC accounts $ 104,230 of cash and $ 113,534 in cashier's checks which were purchased with cash. In the notes to EAC's financial statements, petitioner disclosed: the financial statements reflect only the operations of Electronic Applications Co. and are not meant to disclose the entire net worth of Walter M. Podolece. Because the company is a sole proprietorship, the accompanying financial statements do not necessarily reflect all of the income and deductions of Walter M. Podolece and therefore do not include a provision for Federal and state taxes on income. On his tax returns, petitioner did not report any income from any source other than EAC and net operating losses carried forward. Petitioner also failed to report interest and dividend income for all the years in issue, save 1987. Major discrepancies exist between what petitioner reported on Form 1040 relative to EAC and what *273 was reported in the EAC financial statements for sales, expenses, and profits. Year
Net Sales
Net Sales per
Difference
per Return
Statement
1981
$ 2,214,932
$ 2,724,137
($ 509,205)
1982
2,351,620
2,427,394
(75,774)
1983
2,970,322
3,048,869
(78,547)
1984
2,541,488
2,625,742
(84,254)
1985
2,725,389
2,747,445
(22,056)
1986
2,334,579
2,307,299
27,280 1987
2,470,009
2,437,491
32,518 Year
Expenses per
Expenses per
Difference
Return
Statement
1981
$ 2,205,912
$ 2,220,516
$ (14,604)
1982
2,461,856
1,983,761
478,095 1983
2,920,269
2,243,813
676,456 1984
2,781,819
2,231,951
549,868 1985
2,857,926
2,412,180
445,746 1986
2,577,168
2,075,353
501,815 1987
2,663,481
2,285,623
377,858 Year
Net Profit
Net Profit per
Difference
per Return
Statement
1981
$ 9,020 $ 503,620
($ 494,600)
1982
(110,236)
443,631
(553,867)
1983
50,053 805,054
(755,001)
1984
(240,332)
393,790
(634,122)
1985
(132,538)
335,264
(467,802)
1986
(242,589)
231,944
(474,533)
1987
(193,473)
151,867
(345,340)
The aggregate difference between the returns and the financial statements is an understatement of $ 710,038 in sales, an overstatement *274 of $ 3,015,234 in expenses, and understatement of $ 3,725,265 in net profits. Petitioner did not report any income received as a salary or wages during the audit period; yet he received drawings from EAC in the following amounts: Year
Amount of Drawing
1981
$ 66,469
1982
51,000
1983
151,000
1984
64,896
1985
51,960
1986
30,842
1987
16,877
In addition to the drawings, petitioner withdrew money from ULC and used the proceeds for his own benefit. [4]
The ULC accounts also served as a "custodian" for petitioner's friends and associates. Petitioner held large amounts of cash for these "friends", and upon their request, returned the money. A few such friends were Joe Kolek and Karl Masarek. In 1983, Kolek was investigated and later found guilty of drug and money laundering and other drug-related offenses. Also in 1983, petitioner was indicted on racketeering charges for laundering drug money for himself *275 and Kolek under the guise of ULC. Kolek introduced petitioner to several persons, one of whom was Karl Masarek. Masarek, a Czechoslovakian national, entrusted $ 184,000 in cash to petitioner. Within a few weeks Masarek had withdrawn all the money from petitioner's entrustment. However, petitioner was later asked by Valadmir Vesley, Masarek's son-in-law, to reinvest this money on behalf of Masarek in silver coins. Petitioner had an account at the stock exchange and purchased the coins on margin; Vesley repaid him in cash. Petitioner converted the money he received into cashier's checks each for an amount less than $ 10,000. In another instance, petitioner purchased a helicopter for $ 200,000 from Transcoast International. The owner of Transcoast International, Cecil Stoffer, was indicted with petitioner and Mr. Kolek. Petitioner received from Transcoast International both title to the helicopter and the return of his $ 200,000 payment. Yet another use of the ULC bank accounts involves the purchase of a house in Huntington Beach for $ 760,000. Petitioner secured a $ 500,000 loan for some friends who were foreign nationals. Petitioner gave one of the friends, Isara Zagamacho, *276 $ 160,000 and title was transferred into petitioner's name. However, petitioner never paid the remaining $ 600,000 to the owners. Zagamacho returned the $ 160,000 and it was redeposited into petitioner's account. Yet, the house remained in petitioner's name. When petitioner and the others were indicted, the Government filed a complaint for forfeiture, a civil action, and seized $ 704,949 from several of the ULC accounts. Shortly after the indictment, petitioner suffered an incapacitating injury in a crash in an Ultra-Lite aircraft. Thus, in February 1986, Judge Keep of the Southern District of California, declared petitioner permanently mentally incompetent to stand trial against the criminal allegations. Petitioner settled the forfeiture action with the U.S. Attorney's Office for $ 309,949, including accumulated interest. [5]
*277 In her notice of deficiency, respondent claimed petitioner received unreported taxable income from laundering narcotics money. Based upon all available information and by the application of indirect methods, respondent increased petitioner's taxable income as follows: 1981
$ 239,062
1982
442,632
1983
805,054
1984
393,790
1985
335,264
1986
231,994
1987
151,867
Petitioner contends that no additional outside sources of income exist, and respondent's sources were unsupported and unwarranted by the established and uncontroverted evidence presented. OPINION Preliminary Motions
Initially, we will address two motions before the Court. [6] Petitioner moved for motion to dismiss based upon prior settlement in civil action No. 86-03055S (IEG) Stipulation, Settlement and Consent Decree (hereinafter settlement) in the United States District Court for the Southern District of California. It is petitioner's contention that the settlement "speaks for itself and resolves all matters between Petitioner and the United States Government which may be involved in the present civil proceedings to assess additional taxes against petitioner." *278 Under Rule 53, a case may be dismissed for cause, upon motion of a party or upon the Court's initiative. Petitioner is, in essence, arguing that respondent is estopped from asserting her claim by the inclusion of tax issues in the settlement and thus, her notice of deficiency is invalid. Upon review of the settlement, we find that tax deficiencies were not included in the civil action settlement agreement in connection with the seizure. The settlement agreement reads, in pertinent part: That on or about 13 February 1986 the defendant accounts previously the subject of the March 1984 criminal indictment and restraining orders issued by the court were formally seized * * * [in] the amount of $ 704,949.26 * * * that the United States and the claimant Walter M. Podolece accept as satisfaction and accord this settlement of any and all claims each may have arising out of the seizure of all defendant accounts. [Emphasis added.] Petitioner contends that the payment of the $ 309,949 was in settlement of all the claims which the United States may have had against him, including Federal tax issues. A settlement stipulation is in all essential characteristics a mutual *279 contract by which each party grants to the other a concession of some rights as a consideration for those secured, and the settlement stipulation is entitled to all of the sanctity of any contract. Saigh v. Commissioner, 26 T.C. 171, 177 (1956). Thus, petitioner would not be liable for any additional assessments which arose out of the seizure itself, i.e., the $ 704,949.26, by the U.S. Attorney's Office. The settlement is clearly related only to petitioner's alleged drug-related activities. The settlement stipulation does not relinquish any civil income tax liability between petitioner and respondent. For a settlement to include the issue of tax, it must explicitly say so. See, e.g., American Textile Machine Corp. v. United States, 220 F.2d 584 (6th Cir. 1955); Mil-Spec Contractors, Inc. v. United States, 835 F.2d 865 (Fed. Cir. 1987); Kingsley v. Commissioner, 940 F.2d 646 (1st Cir. 1991), affg. without published opinion T.C. Memo. 1990-79; United States v. Jacob Freidus, 769 F. Supp. 1266 (S.D.N.Y. 1991). Consequently, petitioner has failed to meet his burden *280 of proof that the settlement included Federal income tax. Accordingly, the motion to dismiss is denied. Second, respondent moved to conform the pleadings to the proof pursuant to Rule 41 (b) for tax year 1981. Rule 41 (b) states, in pertinent part: "The Court, upon motion of any party at any time, may allow such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues". Respondent contends that petitioner has additional unreported income of $ 264,558 based upon information received at trial and corroborated by petitioner's financial statements. In Campbell v. Trustees of Leland Stanford Jr. Univ., 817 F.2d 499 (9th Cir. 1987) (quoting 3 Moore, Moore's Federal Practice par. 15.13 [2] (2d ed. 1985)), the court stated that "an amendment will be proper only if it is found that the parties either expressly or impliedly consented for a trial of the issues not raised in the pleadings." We do not allow amendments to include issues which are only inferentially suggested by incidental evidence in the record. See Campbell v. Trustees of Leland Stanford Jr. Univ., supra; Consolidated Data Terminals v. Applied Digital Data Systems, Inc., 708 F.2d 385, 396 (9th Cir. 1983). *281 In the present case, the issue of the validity of the "financial statements" given to the U.S. Attorney's Office by petitioner was expressly raised at trial. Petitioner consistently asserted that the "financial statements" were for internal purposes only. He asserts that such documents were given to the U.S. Attorney's Office merely to establish that moneys he received were in fact from his business, i.e., EAC, not from the laundering of drug proceeds. To that effect, he asserts, the correctness of the numbers was not as important as his attempt to show that such drug-related activity was not conducted. This Court notes petitioner's caveat in his financial statements as to the correctness of the documents. See supra p. 4. We conclude that petitioner's net worth is not totally derived from activities outlined in the financial statements, but includes income from other undisclosed sources. Hence, the financial statements are not incorrect, but represent the EAC portion of petitioner's worth only. For that limited purpose, we accept the statements as correct. Therefore, so much of respondent's motion as seeks to conform the pleadings to the proof regarding the EAC financial *282 statements will be granted. In the final motion, respondent contends that in 1982 a computational error was made in the notice of deficiency which would increase the deficiency from $ 498,990 in that year to $ 609,226. Rule 41 (a)[7] provides that the Court, in its discretion, may grant motions to amend at any time if "justice so requires", i.e., if granting said motions will not result in surprise and substantial detriment or prejudice to petitioners. Waterman v. Commissioner, 91 T.C. 344, 349 (1988). The adjustments to income in the notice of deficiency inadvertently failed *283 to take into account the disallowance of the EAC loss reported on petitioner's 1982 tax return. The adjustment to income in the notice of deficiency read as follows: Adjustments To Income
EAC schedule "C" income
$ 442,632 Dividends
29,967 Interest
136,627 Total adjustments
$ 609,226 Taxable income per return
(110,236)
Taxable income as revised
$ 498,990 However, the adjustment for EAC should have also included a $ 110,236 increase in petitioner's taxable income due to the disallowance of the EAC loss. Therefore, taxable income should have been: Adjustments To Income
EAC schedule "C" income
$ 442,632
EAC loss
110,236
Total EAC adjustment
$ 552,868 Dividends
29,967 Interest
136,627 Total adjustment
$ 719,462 Taxable income per return
(110,236)
Taxable income as corrected
$ 609,226 Thus, the amendment merely corrects a mathematical error resulting from a claimed loss that the statutory notice of deficiency clearly disallowed. Petitioner knew of the disallowance of the loss; thus, the correction of the mathematical error will not result in surprise or substantial detriment/prejudice. Accordingly, so much of respondent's motion *284 as seeks to amend for a computational error in tax year 1982 under Rule 41 (a) is granted. Unreported Taxable Income
Respondent claimed that petitioner had substantial unreported income and unsubstantiated deductions from drug-laundering activities. Although the settlement related to the seizure does not constitute any admission of wrongdoing on the part of petitioner, it is clearly related to petitioner's alleged drug-related criminal involvement. Respondent has shown a likely source of unreported income. Respondent reconstructed petitioner's income and expenses from petitioner's admissions on the record, bank statements outlining deposits and withdrawals of the ULC accounts, and EAC's financial statements. Respondent contends that the other financial documents, which were prepared for and presented at trial, are fictitious. Where a taxpayer fails to keep the required books and records, respondent is authorized under section 446 to reconstruct income in accordance with a method which clearly reflects the full amount of income received. Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989). At the outset, we note that respondent's determinations *285 are presumptively correct, and that petitioner has the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Therefore, the burden is on petitioner to prove that the EAC financial statements given to the Department of Justice and used by respondent are erroneous. See Rule 142(a). At the outset, we note, based on the reasons discussed infra, that ULC-Glendora does not qualify as an exempt organization under section 170(c) as it was not organized and operated for religious purposes, but for tax avoidance and personal inurement to petitioner and his friends. Petitioner admitted transferring money from EAC to ULC and using it for his personal benefit. Petitioner had sole signatory power for all the ULC accounts. He asserts that by his withdrawals he was merely reducing the loan balances on the accounts owed him, as sole proprietor of EAC, from the interest-free loans from EAC to ULC. However, the money was taken from EAC receipts, not petitioner's personal accounts, and was payable to the business, not to petitioner for his personal inurement. Exactly how much was transferred during the audit period is conjecture. However, *286 using available bank statements respondent traced in excess of $ 390,000 from EAC to ULC during the 3-year period ending 1983. Petitioner contends, nonetheless, that the transfers were "all completely legal since both pockets were in the same pair of pants." We disagree. Transactions between controlled taxpayers (EAC and ULC) will be subject to special scrutiny to ascertain whether common control is being used to reduce, avoid, or escape taxes. Marc's Big Boy-Prospect, Inc. v. Commissioner, 52 T.C. 1073 (1969), affd. sub nom. Wisconsin Big Boy Corp. v. Commissioner, 425 F.2d 137 (7th Cir. 1971); sec. 1.482-1(c), Income Tax Regs. Explicit in section 482 is the ability of the Commissioner to allocate income and deductions among commonly controlled organizations, trades, or businesses, not because the common owner has the power to shift income, but only where there has been actual shifting of income or deductions. Marc's Big Boy-Prospect, Inc. v. Commissioner, supra at 1093; V. H. Monette & Co. v. Commissioner, 45 T.C. 15, 37 (1965), affd. 374 F.2d 116 (4th Cir. 1967). Respondent *287 determined from the bank statements that in 1982 petitioner earned $ 136,627 in interest income and $ 30,067 in dividend income. In 1983, petitioner earned $ 11,786 in interest income and $ 9,442 in dividend income. [8] Petitioner failed to include dividend and interest income items on his Form 1040 during the entire audit period, save 1987. Petitioner contends that the ULC's interest expense from silver contract loans exceeded interest received from ULC bank accounts and money markets; thus, since he did not take deductions for the interest expense, the interest income is likewise not includable. We disagree. Dividends and interest are *288 excluded from self-employment earnings unless such dividends or interest are received by an individual in the trade or business as a dealer in securities. Sec. 1402(a)(2). Accordingly, interest and dividend income earned, which is not includable on Schedule C, must be reported on Form 1040. As a general rule, interest received by or credited to the taxpayer constitutes gross income and is fully taxable. Taxable interest income includes interest from savings or other bank accounts. Further, respondent determined that petitioner reported Schedule C expenses aggregating in excess of $ 3 million over expenses listed in the financial statements. Since petitioner admitted in the notes to financial statements that his net worth consisted of more than EAC's activities, it is conceivable that petitioner had income and expenses from other sources. However, petitioner offered no rationale for this discrepancy nor presented any evidence to substantiate any additional business activity. Accordingly, we hold that the expenses as stated on the financial statements are correct. Moreover, respondent determined petitioner overstated his depreciation expense thereby understanding income by *289 the same amount. Petitioner testified that out of $ 166,189 of depreciation expense reported in 1987, $ 113,551 represented depreciation on the Bell helicopter. At one point, petitioner claimed that the helicopter was an asset of ULC, not EAC. It is, however, apparent that petitioner was not the true owner of the helicopter, since the $ 200,000 he purportedly paid for it was returned. Accordingly, he had not basis to depreciate. Thus, no depreciation deduction is allowed EAC or petitioner regardless of their claimed use of the helicopter. Finally, respondent determined petitioner overstated his beginning inventory in 1981 by $ 979,785, which resulted in an understatement of income in the same amount. It is well settled that the opening inventory of one year must coincide with the closing inventory of the preceding year, unless the prior year's closing inventory can be shown to be erroneous. American Can Co. v. Bowers, 35 F.2d 832 (2d Cir. 1929); Steel or Bronze Piston Ring Corp. v. Commissioner, 13 T.C. 636 (1949); sec. 1.471-1 through 1.471-11, Income Tax Regs. Petitioner asserts that he consolidated personal property received from *290 family and friends in the form of inventory into EAC. This amount was added to the beginning inventory for 1981. Petitioner insists that his calculations are correct, because it was done on the instruction of the IRS, to wit, a notation sheet was attached to his 1981 return. Respondent's determination of the inventory is deemed prima facie correct, and the taxpayer has the burden of proof to show not only that it is arbitrary and incorrect, but to prove the correct valuation. Meyers v. Commissioner, 435 F.2d 171 (3d Cir. 1970). Petitioner did not offer any documentation or testimony at trial or on brief to prove respondent's assertions incorrect and to ascertain the true valuation of his inventory. He did not present a copy of the note, which he purportedly attached to his 1981 income tax return, as proof or explanation of the difference. Accordingly, he has failed to meet his burden of proof and respondent's determination is presumed correct. In summation, we hold that petitioner had substantial unreported taxable income as stated on his financial statements, he overreported his expenses, he erroneously deducted depreciation on his Schedule C for the helicopter, *291 and he overreported his beginning inventory in 1982. He has consistently failed to meet his burden of proving that respondent's determinations were not correct. Accordingly, we hold that respondent's calculations as outlined in her notice of deficiency and amended by the motions granted herein are correct. Fraud
Respondent determined petitioner is liable for additions to tax for fraud under section 6653(b) for tax year 1981, section 6653(b)(1) and (2) for tax years 1982 through 1985, and section 6653(b)(1)(A) and (B) for tax years 1986 and 1987. Section 6653(b), (b)(1), and (b)(1)(A) provides that if any part of the deficiency is due to fraud, the addition to tax under this section shall be an amount equal to 50 percent of the deficiency. Moreover, section 6653(b)(2) and (b)(1)(B) adds to the tax an amount equal to 50 percent of the interest due on any part of the deficiency attributable to fraud. Fraud is defined as an "intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing." Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985) (citing Conforte v. Commissioner, 692 F.2d 587, 592 (9th Cir. 1982)); *292 see also Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958). Respondent bears the burden of proof as to additions to tax for fraud under section 6653(b). That burden is to be carried by clear and convincing evidence. Rule 142(b). Further, respondent cannot rely on petitioner's failure to prove error in respondent's deficiency determination to meet her burden of proving fraud. Sec. 7454(a); Rule 142(a); Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982). Fraud is not to be imputed or presumed, Beaver v. Commissioner, 55 T.C. 85, 92 (1970), but rather must be established by independent evidence of fraudulent intent. Yet, fraud may be proven by circumstantial evidence and reasonable inferences drawn from the facts, because direct proof of petitioner's intent is rarely available. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983). To meet her burden, respondent must show that (1) there was an underpayment and (2) petitioner intended to evade taxes known to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection *293 of taxes. Lord v. Commissioner, 525 F.2d 741, 746 (9th Cir. 1975); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Respondent need not prove the precise amount of the underpayment resulting from fraud; so long as she shows that "any part of any underpayment . . . is due to fraud", the addition to tax will be upheld. Conforte v. Commissioner, 692 F.2d 587, 590 (9th Cir. 1982). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). Failure to file tax returns, without more, may not establish fraud. Rowlee v. Commissioner, supra.However, failure to file may be considered in connection *294 with other facts in determining whether there is fraud. Beaver v. Commissioner, supra at 93. Also, the failure to file over an extended period of time is persuasive evidence of an intent to defraud respondent. Stoltzfus v. United States, 398 F.2d 1002, 1005 (3d Cir. 1968), affd. 393 U.S. 1020 (1969). In Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the court stated that the existence of the following facts, inter alia, supported a finding of fraudulent intent: (1) The taxpayer engaged in an illegal activity; (2) he failed to report substantial portions of his income, which he knew to be taxable; (3) he attempted to conceal his illegal activities; and (4) he failed to maintain adequate records. For the reasons stated below, we find that respondent has proved by clear and convincing evidence that petitioner fraudulently intended to evade the taxes which he knew to be owing, and that his actions were directed at concealing his tax liability. Petitioner entered into a settlement agreement with the U.S. Attorney's Office for $ 309,949 on a *295 drug-laundering scheme. Although the agreement elicited no admission of guilt on petitioner's behalf, the Court is entitled to consider such evidence along with other evidence in determining the intent of the taxpayer in doing certain acts. Petitioner used at least nine bank accounts under the name of ULC to hide his EAC income from respondent and to transact business for friends who were parties to the criminal investigation, at least one of whom was convicted. These transactions include the purchase of the house in Huntington Beach and the purchase of the helicopter. Petitioner had sole dominion over the accounts and used them for his personal expenses. Petitioner purchased 20 cashier's checks in amounts just below $ 10,000; 13 were purchased on the same day. It is common knowledge that cash transactions made with banks in amounts over $ 10,000 are required to be reported to the Federal Government. 31 C.F.R. sec. 103.22 (1988). On numerous occasions, petitioner made cash deposits averaging $ 8,000-$ 9,000 a deposit. Petitioner's use of cash and cashier's checks rather than checks is an important factor in an effort to conceal his income from the Government. See McGee v. Commissioner, 61 T.C. 249, 260 (1973), *296 affd. 519 F.2d 1121 (5th Cir. 1975). The structuring of transactions to avoid this reporting requirement is an indicium of fraud and an intent to evade taxes. Petitioner failed to maintain adequate books and records to clearly ascertain his business activity. He received and transferred large amounts of taxable income from EAC to ULC. Yet, on his income tax returns, no taxable income was reported. Petitioner did not file returns for 1981 through 1987, save 1982, until after he received the notice of deficiency from respondent. When he finally did file, he overstated his expenses by at least $ 3 million and overstated his 1981 inventory by nearly $ 1 million. Thus, based on all the above factors, petitioner's actions clearly and convincingly show his intent to evade taxes owing and due. Respondent proved that there was a substantial underpayment based on her reconstruction of petitioner's books and records. Accordingly, we conclude from the record as a whole that respondent has carried her burden of proving fraud for each year under section 6653(b), (b)(1) and (2), and (b)(1)(A) and (B). Section 6654(a)
Section 6654 imposes an addition to tax for an *297 underpayment of estimated taxes. Petitioner has the burden of proving error in respondent's determination that additions to tax should be imposed under section 6654(a). Hollman v. Commissioner, 38 T.C. 251, 263 (1962). Petitioner reported no tax liabilities for any of the years in issue, and failed to introduce any evidence indicating that respondent so erred in her notice of deficiency. Accordingly, we conclude that petitioner is liable for additions to tax under section 6654(a). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
2. During the years 1980, 1981, and 1982, ULC-Modesto was listed by the Internal Revenue Service in Publication 78, Cumulative List of Organizations Described in Section 170(c) of the Internal Revenue Code 1954↩. However, on August 28, 1984, the Internal Revenue Service announced by news release that ULC-Modesto was no longer so listed.
1. 50 percent of the interest due on the deficiency. [2] Respondent abandoned her position with regard to this section.↩
1. All section references are to the Internal Revenue Code for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. Petitioner deposited $ 542,496 in 1981, $ 1,940,727 in 1982, and $ 311,218 in 1983 into the ULC accounts.↩
4. On Schedule C, EAC did not take any deductions or credits for the amounts transferred to ULC.↩
5. The amount initially seized and held by the U.S. Marshals Service was $ 704,949. Of that amount, $ 309,949.26 was paid to the United States in settlement of the civil action, $ 50,000 was paid as attorney fees, and $ 345,000 was returned to petitioner.↩
6. Petitioner and respondent each filed a motion. However, respondent's motion is twofold; it consists of a motion to conform the pleadings to the proof, Rule 41 (b), and a motion to correct for computational error, Rule 41 (a)↩.
7. Respondent miscasts this motion as a request to amend the pleadings to conform to the evidence pursuant to Rule 41 (b). This subsection is inapplicable since the requested amendment does not involve an issue tried by express or implied consent, nor was evidence received over an objection that it was not within the ambit of the issues raised by the pleadings. Respondent's motion will be considered under Rule 41 (a)↩.
8. Dividend and interest income information was available for 1982 and 1983 only, presumably because bank records for the later years were destroyed. The 1982 and 1983 records were obtained from the Department of Justice. Petitioner failed to report income from these sources for all the years in issue, except 1987, which he filed after receiving respondent's notice of deficiency.↩