**MIL–SPEC CONTRACTORS, INC.,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 87–1203.

United States Court of Appeals,
Federal Circuit.

Dec. 16, 1987.

R. Christian Berg, Harris & Berg, Washington D.C., argued for plaintiff-appellant. With him on the brief was Marynell De-Vaughn, Washington, D.C.

Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Dept. of Justice, New York City, argued for defendant-appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen. and David M. Cohen, Director, Washington, D.C.

Before SMITH, Circuit Judge, BALDWIN, Senior Circuit Judge, and ARCHER, Circuit Judge.

Rachel L. Howard, Haas & Najarian, San Francisco, Cal., argued, for plaintiff-appellant.

Carolyn E. Galbreath, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With her on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director. Also on the brief, was Stephen E. Temmell, Trial Atty., U.S. Army Engineer Dist., Los Angeles, Cal., of counsel.

Before FRIEDMAN, SMITH, and MAYER, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Armed Services Board of Contract Appeals (Board), dismissing a contractor's claim for additional compensation on the ground that an oral agreement to settle the claims constituted an accord and satisfaction. *Mil-Spec Contractors, Inc.*, 87–1 B.C.A. (CCH) ¶ 19,391 (Sept. 23, 1986). We hold that there was not a valid accord and satisfaction, and therefore reverse and remand.

I

The government awarded to the predecessor of the appellant Mil–Spec Contractors, Inc. (Mil–Spec), a contract to insulate certain buildings on Norton Air Force Base in California. The contract was funded from an Air Force general account for energy conservation. The Air Force allocated approximately $622,000 for the work. The contract price was $581,247, and a contingency fund of $6,000 to $7,000 was available for contract modifications.

After completing the work, Mil–Spec submitted to the government a series of increasing claims for additional costs it allegedly incurred. After Mil–Spec had rejected several of the government's proposals for additional payment, Mr. Hooppaw, the resident contracting officer (who was also the resident engineer), telephoned Mr. Barnes, Mil–Spec's principal officer, in late August or early September 1983. Mr. Hooppaw explained that he could not obtain extra funds for additional payment under the contract because the money came from an appropriation that would expire on September 30, 1983, and that after that date the $6,000–$7,000 in the contingency fund would not be available. Mr. Barnes was advised that if he did not agree to a settlement, "the only other way to get funds is to go to court."

Three days before the funds would expire, Mr. Barnes and Mr. Barker, a negotiator, had several telephone conversations during which they orally agreed upon a settlement. Mr. Barker's notes state that Mr. Barnes

agreed to drop his proposal of [a] $70,-956.00 increase in Contract amount and accept the Government estimate amount of $6,367.00. In doing so, the contractor requested that all remaining funds (less $100.00) be paid to him with this settlement.

Both parties agreed to accept [a] $6367.00 increase in [the] Contract amount as fair and reasonable. The Contract time was extended 87 calendar days to a final completion date of 20 June 1980. The negotiated price of $6367.00 is hereby accepted subject to approval of the Contracting Officer.

The contracting officer, Mr. Hooppaw, then prepared a contract modification (standard form 30), signed it and mailed it to Mr. Barnes for his signature. In the interval, an Internal Revenue Service (IRS) employee had told Mr. Barnes that with a legitimate claim Mr. Barnes could have obtained more than the government had offered. Mr. Barnes telephoned Mr. Hooppaw and stated that he did not accept the government's settlement offer.

On September 30, 1983, the government issued a check for $6,367 to the IRS because of a previously filed tax lien.

Mil–Spec filed with the contracting officer a claim for its alleged additional costs. When the contracting officer failed to decide the claim within a reasonable time,

Mil–Spec appealed to the Board. After a hearing, the Board held that the oral settlement agreement constituted an accord and satisfaction, and denied the appeal.

## II

The Court of Claims, the decisions of which are binding precedents in this court, *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed.Cir.1982), has stated:

> The essential elements of an effective accord and satisfaction are proper subject matter, competent parties, meeting of the minds of the parties, and consideration.

*Brock & Blevins Co. v. United States*, 343 F.2d 951, 955 (Ct.Cl.1965) (quoting *Nevada Half Moon Mining Co. v. Combined Metals Reduction Co.*, 176 F.2d 73, 76 (10th Cir.1949), *cert. denied*, 338 U.S. 943, 70 S.Ct. 429, 94 L.Ed. 581 (1950)).

Relying on that decision, the Board held:

> These essential elements are fully met in this appeal. There is no question concerning either the propriety of subject matter or the competence of the parties. Both parties agree that there was a meeting of the minds and the fact that this was an oral agreement does not change its legal effect. Consideration was shown by the check which the Government issued and which, because of a prior tax lien, was paid to IRS for appellant's account thus diminishing its outstanding delinquent taxes. Appellant agreed to accept that amount for a full settlement of all outstanding claims.

*Mil–Spec Contractors, Inc.*, 87–1 B.C.A. (CCH) ¶ 19,391 (Sept. 23, 1986).

■ The ruling of the Board has three fatal flaws: (A) There was no valid oral agreement because Mr. Barker, the negotiator, had no authority to bind the government to the settlement; (B) as the government recognized, the accord and satisfaction constituted a modification of the contract which was required to be in writing and signed by both parties; and (C) the government's "payment" to Mil–Spec of $6,367 by sending a check for that amount to the IRS did not comply with the terms of the oral agreement and therefore did not constitute consideration adequate to support the alleged accord and satisfaction.

A. "It is well established that a purported agreement with the United States is not binding unless the other party can show that the official with whom the agreement was made had authority to bind the Government." *S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 4 (Fed. Cir.1985) (citations omitted). The oral agreement was a modification of the contract, since it increased the amount the government would pay for the work Mil–Spec had done. Only the contracting officer was authorized to bind the government to such a modification. *Cf.* 48 C.F.R. § 2.101 (1986) (" 'Contracting officer' means a person with the authority to enter into, administer, and/or terminate contracts and make related determinations and findings.").

Mr. Barker, who negotiated the oral settlement with Mr. Barnes, was not the contracting officer but only a negotiator. As such, he had no authority to commit the government. As Mr. Barker himself recognized, only the contracting officer had that authority: Mr. Barker's notes of the negotiation and agreement stated that the "negotiated price of $6,367.00" was "accepted subject to approval of the Contracting Officer."

■ The contracting officer also recognized this fact, since he prepared and signed a form 30 contract modification document that embodied the oral settlement previously negotiated. Unless and until there was a binding modification to which both Mil–Spec and the contracting officer had agreed in writing, there could not be a binding modification of the contract. The oral agreement of September 27, 1983, could not and did not constitute a valid accord and satisfaction. The contracting officer's subsequent approval of the oral agreement, reflected in his signature of the written contract modification form he prepared, did not *nunc pro tunc* turn the prior oral agreement into a valid contractual commitment that bound the government.

B. The Federal Acquisition Regulations applicable to the contract in this case re-

quire that a modification of a contract be in writing and executed by both parties. Federal Acquisition Regulations System, 48 C.F.R. § 2.101 (1986), the Definitions section, states in pertinent part:

"Contract" means a mutually binding legal relationship.... It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing.... contracts include ... bilateral contract modifications.

Pertinent provisions of 48 C.F.R. provide as follows:

§ 43.101 (1986):

"Contract modification" means any written change in the terms of a contract (see 43.103).

\* \* \* \* \* \*

"Supplemental agreement" means a contract modification that is accomplished by the mutual action of the parties.

§ 43.103 (1986):

Contract modifications are of the following types:

(a) *Bilateral.* A bilateral modification (supplemental agreement) is a contract modification that is signed by the contractor and the contracting officer....

§ 43.301 (1986):

(a)(1) The Standard Form 30 (SF 30), Amendment of Solicitation/Modification of Contract, shall ... be used for—

\* \* \* \* \* \*

(v) Supplemental agreements (see 43.-103);

Thus, any bilateral modification of a contract is a "supplemental agreement," which requires the execution of a written standard form 30.

Mr. Hooppaw, the contracting officer, recognized that the oral settlement agreement that Mr. Barker had negotiated with Mr. Barnes would not be effective until both the contracting officer and Mr. Barnes had signed a written modification agreement. After the oral settlement had been negotiated, Mr. Hooppaw prepared a writ-

ten modification agreement, signed it, and sent it to Mr. Barnes to sign. If Mr. Hooppaw had believed that the oral settlement itself was a valid agreement that bound both parties to the contract, there would have been no need for him to prepare the form 30 contract modification agreement. All he need have done was to have written a simple letter to Mr. Barnes summarizing and confirming the oral agreement.

In *SCM Corp. v. United States,* 595 F.2d 595, 598 (1979), the Court of Claims held that where the pertinent regulations required that contract modifications be written, an oral modification that had not been reduced to writing and signed by both parties was ineffective. The situation in *SCM* was analogous to that in the present case.

In *SCM* the contractor sought an equitable adjustment of approximately $122,-000. The contracting officer and the contractor by telephone agreed to settle the dispute for $55,000. Preparation of the written contract modification provision was delayed because the agency lacked funds to make the payment. When the contracting officer finally sent the written modification, the contractor refused to sign it on the ground that it did not properly reflect the oral agreement.

The contractor then filed suit for the $55,000, alleging a breach of the oral settlement agreement. The Court of Claims rejected the claim on the ground that the governing Armed Services Procurement Regulations, the pertinent provisions of which were similar to the Acquisition Regulations involved in this case, "require that settlements are written contracts to be executed on standard form 30." 595 F.2d at 598. The court stated:

Oral understandings which contemplate the finalization of the legal obligations in a written form are not contracts in themselves. When legal obligations between the parties *will be deferred* until the time when a written document is executed, there will not be a contract until that time. Under the regulations, Government funds were not obligated until the execution of standard form 30. The parties were well aware of the fact that only the written contract modification could finalize their agree-

ment.... We thus conclude that neither party was bound by its negotiations until standard form 30 was executed.... Thus, we conclude that the representations made by telephone on January 6, 1976, did not constitute a contract.

*Id.* (emphasis in original) (citations omitted).

There are factual distinctions between *SCM* and the present case, on which the government relies in attempting to distinguish *SCM*. In *SCM* the contractor refused to sign the written modification because it allegedly did not correctly reflect the oral agreement. In the present case, on the other hand, the contractor refused to sign because he believed he could obtain a greater amount if he resorted to litigation. In *SCM* it was much clearer than in the present case that the contractor was aware that there could be no valid settlement agreement until the written form 30 contract modification agreement was signed by both parties.

Those distinctions, however, do not undercut the basic principle enunciated in *SCM* that an oral modification of a written contract, which may be modified only by bilateral written agreement, is ineffective. In its basic analysis *SCM* is indistinguishable from the present case. *SCM* fully supports, if it does not compel, our conclusion that the oral agreement to settle Mil–Spec's claim for $6,367 was not an effective modification of the contract until both parties had signed a written modification agreement—which the contractor never did.

Indeed, at earlier stages of this case the government itself recognized that the lack of a signed modification agreement precluded an accord and satisfaction. The government's answer before the Board did not include an accord and satisfaction as an affirmative defense, although it included three other defenses. In response to a question from the administrative judge at the Board hearing whether the government was arguing accord and satisfaction, government counsel stated:

We would have hoped we had one but obviously we don't since the contractor didn't sign it. So I don't see how we could argue it.

The government contends that the accord and satisfaction issue thereafter was raised and litigated in the case and therefore properly is before us. The facts we have stated, however, are not designed to show that the issue is not properly before us but rather to indicate an initial government recognition that a signed written modification was necessary for there to be a valid accord and satisfaction in this case. Although an oral accord and satisfaction may be valid in some circumstances, the oral settlement in this case was not a valid accord and satisfaction.

C. The oral settlement agreement contemplated and provided that the $6,367 would be paid to Mr. Barnes. As the negotiator's notes stated, Mr. Barnes "requested that all remaining funds (less $100.00) be paid to him with this settlement."

In fact, the government paid nothing directly to Mr. Barnes. Instead it sent a check reflecting the settlement to the IRS, to be applied against the contractor's existing tax debt, for which the IRS had a lien. The record does not show whether the check was made payable to Mr. Barnes or the IRS, or what the Air Force stated to the IRS in transmitting the check.

There is no indication that in negotiating the settlement Mr. Barker informed Mr. Barnes that the amount of the settlement would be paid not to Mr. Barnes but to the IRS. The record does not show that Mr. Barnes agreed or accepted this unusual method of "payment." Although the government may have acted within its legal authority in making payment to the IRS, such payment cannot be said to have been a term of the settlement to which Mr. Barnes agreed.

## CONCLUSION

The decision of the Armed Services Board of Contract Appeals is reversed, and the case is remanded to the Board to consider the merits of Mil–Spec's claim.

REVERSED and REMANDED.