ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Interaction Research Institute, Inc. | ) | ASBCA No. 61505 |
| | ) | |
| Under Contract No. 000000-00-0-0000 | ) | |

APPEARANCE FOR THE APPELLANT: Ms. Barba B. Affourtit
  Vice President

APPEARANCES FOR THE GOVERNMENT: Craig D. Jensen, Esq.
  Navy Chief Trial Attorney
John Torresala, Esq.
Erin L. Hernandez, Esq.
Lt Col Russell R. Henry, JAGC
  Trial Attorneys
  Western Area Counsel Office
  Camp Pendleton, CA

OPINION BY ADMINISTRATIVE JUDGE WOODROW ON THE GOVERNMENT'S
MOTION FOR SUMMARY JUDGMENT

This appeal concerns three unpaid invoices for trainings allegedly provided by Interaction Research Institute, Inc. (IRI or appellant) to the I Marine Expeditionary Force Training and Experimentation Group within the U.S. Marines' Advisor Training Cell (government) during April 2009, May 2009, and another between June and August 2009. The government has moved for summary judgment, arguing that there is no documentation of an express contract or approval by the government in the form of a Standard Form 182 (SF-182)[1] to support a showing of an implied-in-fact contract. For the reasons discussed below, we deny the motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

We previously have issued a decision denying the government's motion to dismiss for lack of jurisdiction, *Interaction Research Institute*, *Inc.*, ASBCA No. 61505, 18-1 BCA ¶ 37,196 at 181,080. Familiarity with that decision and the facts discussed therein is presumed. However, we will reiterate several relevant facts here for clarity.

---

[1] Standard Form 182 (SF-182) is a Request, Authorization, and Certification of Training form. It typically is used to document a training, education, or professional development event from a non-government source. *Interaction Research Institute*, *Inc.*, ASBCA No. 61505, 18-1 BCA ¶ 37,196 at 181,080.

*April 2009 Training*

1.  On April 4, 2009, IRI sent a quote for a training program to Major Philip A. Bain at his verbal request. This training was carried out during April 6-10, 2009. (April 2009 training) (Gov't mot. at ex. 2 at 31, ex. 3 at 7; R4, tab 1 at 27) Mrs. Affourtit, IRI's Vice President, stated in a later email, "all services were conducted by IRI and received by ATG that week" (R4, tab 2 at 50). Major Bain ordered another training in a similar fashion later that same month (gov't mot. at ex. 1 at 8).

2.  On September 16, 2009, Mrs. Affourtit emailed Cpl Javvad Shah that "the invoice and corresponding quote to Major Bain for IRI services conducted during April 6-10, 2009." In her email, Mrs. Affourtit stated, "[w]e were advised that since the quote was submitted late to TEG, it was undergoing a ratification process. Do not know whether the ratification process is complete." (Gov't mot. at ex. 2 at 45-46) This invoice was for $14,940.64 (gov't mot. at ex. 2 at 31).

*May 2009 Training*

3.  On February 5, 2010, IRI sent an invoice to Major Bain for two trainings that IRI conducted on May 11-13, 2009, and on May 10, 2009. As Mrs. Affourtit described it, she provided Major Bain with a price quote for the trainings "right before the training began, since we found out about the training at the last minute" (R4, tab 2 at 72). These two trainings were a Marine Advisor Training Impact System (MATIS) course, and a "Cross Cultural Psychology Course for ETT-1" (May 2009 training) (R4, tab 2 at 38, tab 4 at 174, 184). The trainings were priced at $3,492.82 and $3,560 respectively (R4, tab 4 at 177). These trainings took place as planned (R4, tab 4 at 189-193; gov't mot. at ex. 3 at 33).

4.  Other trainings had relatively short lead times between when the government would order the training and when it was to be performed (*see*, *e.g.*, R4, tab 1 at 16, 23, 31-32, 45; gov't mot. at ex. 2 at 103, ex. 3 at 7-8). IRI would often seek and receive payment of invoices after the trainings were conducted (*see*, *e.g.*, R4, tab 1 at 47-51, 54-55, 58-59). The government would pay for these trainings via the Government Commercial Purchase Card (GCPC), including Cpl Javvad Shah paying at least two invoices (gov't mot. at ex. 2 at 2-3; R4, tab 2 at 242). According to an August 24, 2010 email by Dr. Affourtit, IRI's President:

> In the past (2008-2009), we conducted training on verbal or email authorization using SF 182 agreements. Contracts were

2

processed in 1-2 days.[2]  Back up documents and periods of
service were provided with IRI invoices.  Some of the
invoices were eventually paid.

(Gov't mot. at ex. 2 at 103)

5.  On June 3, 2009, Mrs. Affourtit emailed Cpl Cynthia Nicanor a summary of IRI's invoices.  She stated, "We have received payment for all that you sent the SF 182 forms for and authorized Credit Card payment.  Please sent the any [*sic*] SF 182's that have not yet been paid and I will send invoices re the SF 182 forms.  Major Bain is working on a future contract so that we don't have to go through this every time." (R4, tab 1 at 42)

6.  On June 18, 2009, Mrs. Affourtit emailed Cpl Nicanor, seeking to verify whether she was "still the I MEF TEG Fiscal Clerk and the POC for payment for IRI services" and requesting the "SF 182s for IRI services completed in April and May, 2009?" (gov't mot. at ex. 2 at 71-72).  Cpl Nicanor responded that she was "still the POC for payment for IRI services" and "as for the May and April payments, Cpl Shah will be taking care of that, he has the SF 182 for those dates" (*id.* at 71).

7.  In a document titled "Official Statement from LCpl[3] Shah" which is neither sworn nor dated, Cpl Shah states he had paid for various other training dates using "my Government Credit Card . . . .  At the time I was the alternate card holder and Cpl Nicanor was the primary card holder responsible for making the bulk of the credit card purchases." (Gov't mot. at ex. 2 at 96; *see also* gov't mot. at ex. 1 at 8, referencing other trainings were purchased by government purchase card)  He also discusses direction from another office, given at an unspecified date, to make other payments he considered valid, though he "was never provided any paperwork (SF182) to authorize paying them" (gov't mot. at ex. 2 at 96).  By August 19, 2009, Cpl Shah began using the title Supply/Fiscal Chief in his email signature block (gov't mot. at ex. 2 at 99)

*June & August 2009 Trainings*

8.  On June 5, 2009, Captain Joshua W. Burgess emailed IRI and other Marines, including Major Bain, stating "[b]elow dates [June 18 & 22, 2009] are solid for Lima Company cross-cultural psychology courses" (R4, tab 1 at 37).  This is first instance that IRI discovered they were going to perform a training on those dates (gov't mot. ex. 3 at 8).

---

[2] This appears to be a loose use of the term 'contract' and likely refers to invoices, as the parties agree that there was no express contract (*see*, *e.g.*, gov't mot. at ex. 2 at 13).
[3] All other references in the record are to Cpl Shah.

3

9. Mrs. Affourtit sent another quote for a training on June 11, 2009, to LCpl Brandon K. Perry, who had requested it by phone (R4, tab 1 at 39). IRI conducted this training from June 18-22, August 7-10, 12-13, and 13-15, 2009 (August 2009 training) (gov't mot. at ex. 2 at 7, 39, 73). The invoice for this training was for $21,471.05 (gov't mot. at ex. 2 at 32).

10. Several invoices went unpaid, with IRI emailing government officials inquiring as to the reason for the nonpayment and status (R4, tab 2 at 40-41). Appellant compiled an undated spreadsheet of contacts it had with various members of the government attempting to get its invoices paid, including one phone call on September 18, 2009, where IRI "[p]rovided info to process three invoices" (R4, tab 4 at 5-7).

11. In an unsworn, undated statement, 1st Lt. Lucius Spencer says he ordered trainings from IRI for August 17 and 20, 2010, but explained "the contract request was too late," they were "not able to authorize any allocation of funds to compensate them" and that "there was no money and no contract involved." The Affourtits agreed to do the training anyway, but when they returned on August 20, "Major [Erich] Stefanyshyn ordered a stop to any and all support that IRI was providing." (Gov't mot. at ex. 2 at 8) "Major Stefanyshyn explained to IRI in a meeting that the training was being cancelled due to no formal agreement between the U.S. Government and IRI" (gov't mot. at ex. 2 at 2). Despite Dr. Affourtit offering to conduct the training voluntarily, and anonymously, the training was cancelled (gov't mot. at ex. 2 at 9).

12. After reviewing the situation and several outstanding invoices IRI had submitted to the government, Major Stefanyshyn emailed IRI on October 21, 2010. He informed them of his recommendation that five of the invoices should not be paid, as there was no contracting authority to order these trainings. (Gov't mot. at ex. 2 at 105) In a separate document supplied by the government, Major Stefanyshyn states that "[a] vendor has to show a valid invoice, such as a purchase request and receiving document that training was requested and provided (SF-182 form, rosters with social security numbers)" (R4, tab 2 at 6, 106).

13. On January 26, 2012, the government conducted a Command Investigation concerning the unpaid invoices. The government concluded that it could substantiate invoices for training events conducted on November 18-25, 2009, May 11-13, 2009, and August 17-20, 2010, and agreed to ratify payment of the invoices for those events. The events included the Cross Cultural course held in May 2009, but not the MATIS course (gov't mot. at ex. 5 at 1-9; R4, tabs 2 at 1, 3 at 9). However, after a second Command Investigation concluded on April 12, 2017, the government was unable to find SF-182s related to the April, May, and August 2009 training events (*see generally* gov't mot. at exs. 1, 9).

14. On January 5, 2016, IRI requested "the final disposition regarding IRI's request for payment of services completed in FY 2009" which consisted of the April and August 2009 trainings, as well as the MATIS portion of the May 2009 training (R4, tab 4 at 1-2). The government denied the claim on October 31, 2017 (R4, tab 7). IRI timely appealed the denial.

DECISION

As the movant, the government must set forth sufficient material facts on all relevant issues raised by its motion. *Celotex Corp. v. Catrett*, 477 U.S.317, 322 (1986). Summary judgment will be granted if there are no genuine issues of material fact. *Id.*; FED. R. CIV. P. 56(c). A material fact is one which may make a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We "evaluate each party's motion on its own merits." *BMY, A Division of Harsco Corp.*, ASBCA No. 38172, 93-2 BCA ¶ 25,704 at 127,868. Appellant has not submitted a filing in response to this motion, so we cannot say any of the material facts are in dispute, *per se*. Thus, we consider whether the government has presented facts sufficient to entitle it to judgment as a matter of law.

The government's motion contends that no express or implied contract exists between it and appellant. The government argues that while an SF-182 is not an express contract in itself, "it is possible for a properly approved SF-182 to serve as evidence of implied authority to contract." However, as two Command Investigations "could not produce any SF-182 documentation to support the Appellant's remaining disputed invoices, the Government must conclude that no such documentation exists." (Gov't mot. at 7) Notably, the government argues "no documentation currently exists or can be located to establish that an Agency official with actual authority . . . committed the Government to the alleged training events" while making "no assertion herein as to whether IRI was informed by Government personnel that the disputed training[s were] approved." Therefore, the government argues, any approval of the training must have been done without actual authority.

As explained in our previous opinion denying the government's motion to dismiss, the elements of a contract with the government, including an implied-in-fact contract, are (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) actual authority on the part of the government's representative to bind the government in contract. *Interaction Research Institute, Inc.*, ASBCA No. 61505, 18-1 BCA ¶ 37,196 at 181,080 (citing *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003)). However, the nature of the evidence establishing an implied-in-fact contract will differ from that of an express contract. *Id.* "An implied-in-fact contract is one founded upon a meeting of the minds and is 'inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Id.* (citing *Balt. & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923). "Implied actual authority 'is restricted to

5

situations where such authority is considered to be an integral part of the duties assigned to a government employee.'" *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009) (quoting *Aboo v. United States*, 86 Fed. Cl. 618, 627 (2009)). "Implied authority binds the Government where a Government representative without actual authority exercises an integral part of the duties assigned to that Government employee." *Miller Elevator Co. v. United States*, 30 Fed. Cl. 662, 693-94 (1994) (citing *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)).

Here, the government does not allege that *none* of the staff involved with ordering the training lacked the authority, just that there are no SF-182s documenting the proper approval of the training. As we stated in our previous opinion, an SF-182 may be used to show implied actual authority to bind the government in contract, but it is not the only way to do so. Indeed, it is possible to have an implied-in-fact contract without an express document. *Interaction Research Institute, Inc.*, ASBCA No. 61505, 18-1 BCA ¶ 37,196 at 181,080.

Indeed, the government's course of dealing demonstrates that the employees involved likely did have authority. Until Major Stefanyshyn's intervention on August 20, 2010 (SOF ¶ 11), the government's course of dealing with ordering IRI trainings appears to have been followed for the April, May, and August 2009 training events, as well as the other training events for which the government paid (SOF ¶¶ 5-7). Under this process, the government admits it paid IRI for seven training events via government credit card, and ratified an additional three commitments reflected by invoices after proper documentation was uncovered, including the Cross Cultural course involved in the May 2009 training (SOF ¶ 13). For the April and May 2009 training events, Major Bain requested a quote for IRI to conduct a training on specific dates, and received an invoice shortly thereafter (SOF ¶¶ 1-3). When IRI asked about the payment process, Cpl Nicanor stated Cpl Shah would be "taking care of" payments, as "he has the SF-182 for those dates" (SOF ¶ 6). Cpl Shah, who in August 2009, was using "Supply/Fiscal Chief" in his signature block, states (albeit in an unsworn statement with an inconsistent rank) that he was an "alternate card holder" for a GCPC, the method of payment used for these trainings (SOF ¶¶ 4, 7). These same procedures appear to have been used for the August 2009 training. In that situation, LCpl Perry requested a quote on the training, and Capt. Burgess told IRI at least part of the training was scheduled (SOF ¶ 9).

While there appear to have been internal restrictions on Cpl Shah's use of the GCPC (SOF ¶ 7), we don't find these restrictions to be conditions on his actual authority to commit the government, like those in *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998), cert. denied, 525 U.S. 1177 (1999) (finding a CO's warrant conditioned his authority on making approvals in writing, thus rendering

him unauthorized to verbally alter a contract).[4] Rather, it appears that ordering these training events may have been an integral part of his job, as in *North American Landscaping*, ASBCA No. 60235 *et al.*, 18-1 BCA ¶ 37,116 at 180,655 (finding implied actual authority in a project engineer and project manager to direct the contractor).

In order for the government to succeed on summary judgment, we must infer that the persons who ordered the disputed training lacked the (implied) actual authority to do so. Because using the SF-182 was part of the standard operating procedure at the time, and because the government previously paid for seven classes using SF-182s, the implication is that the disputed classes were authorized in the same fashion. The fact that the government cannot locate the relevant SF-182s could just as easily point to a record-keeping problem as to a sudden deviance from standard procedures. Although we do not question the diligence of the government's search for SF-182's associated with the disputed training courses, the fact that no SF-182's have been located does not necessarily imply that the trainings were unauthorized. We cannot grant summary judgment on the basis of such an inferential leap, particularly when the government's course of dealing suggests that the individuals involved – such as Major Bain – possessed authority to bind the government. *CP², Inc.*, ASBCA Nos. 56257, 56337, 11-2 BCA ¶ 34,823 at 171,353 (citing *M. Maropakis Carpentry, Inc. v. U.S.*, 609 F.3d 1323, 1327 (Fed. Cir. 2010)) (holding that all inferences must be drawn in favor of the non-moving party). Therefore, we deny the government's motion, as summary judgment is not appropriate at this time.

## CONCLUSION

For the reasons discussed above, the government's motion is denied.

Dated: May 5, 2021

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[4] The government motion cites *Mil-Spec Contractors v. United States*, 835 F.2d 865, 867 (Fed. Cir. 1987) for the proposition that proper authority would only exist in a GCPC cardholder if they acted "in accordance with Agency procedures" (gov't mot. at 7 n.10). We do not read *Mil-Spec Contractors* to support that proposition.

7

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61505, Appeal of Interaction Research Institute, Inc., rendered in conformance with the Board's Charter.

Dated: May 5, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8