ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Dawson Technical, LLC | )  ASBCA No. 62389 |
| | ) |
| Under Contract No. FA8903-13-D-0002 | ) |

APPEARANCES FOR THE APPELLANT:     Johnathan M. Bailey, Esq.
                                   Kristin E. Zachman, Esq.
                                     Bailey & Bailey, P.C.
                                     San Antonio, TX

APPEARANCES FOR THE GOVERNMENT:    Jeffrey P. Hildebrant, Esq.
                                     Deputy Chief Trial Attorney
                                   Christopher M. Judge Hilborn, Esq.
                                     Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE THRASHER

The government has filed a motion for summary judgment contending it is entitled to judgment as a matter of law because appellant's, Dawson Technical LLC (Dawson), claim is barred by the doctrine of accord and satisfaction (gov't mot. at 1). The Board denies the government's motion for the reasons stated herein.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

On June 26, 2013, the parties entered a multiple award indefinite-delivery indefinite-quantity ("IDIQ") Contract, No. FA8902-13-D-0002, (the Contract) for the provision of on-site Advisory and Assistance Services (A&AS). On-site services were required at specified locations around the world (R4, tab 1, tab 37 at 19, tab 39 at 20). The Contract Performance Work Statement (PWS) at Para. 2.0 described the services to be provided under the various task orders, including Information Management Support, Project Management Support, Quality Assurance/Quality Control, and Strategic Planning (R4, tab 1 at 63-68).

Although Dawson was issued nine task orders (TOs) over the course of the contract, the government's motion only focuses upon three of them - FA8903-17-F-0382 (382), FA8903-17-F-0383 (383), and FA8903-17-F-0367 (367). Performance under TOs 367, 382, and 383 began on August 14, 2017 (R4, tab 35 at 3, tab 37 at 3, tab 39 at 3). Like all the previous TOs, each task order was awarded on a firm fixed price basis and contained its own PWS for the specific services to be provided under that task order, i.e., TO 383,

program management; TO 382, technical support; and TO 367, production support (R4, tab 23 at 2, tabs 28-29).

Although each of the TOs were FFP, Dawson was paid on a monthly basis using a negotiated procedure that included possible deductions taken by the government. The deduction process was a negotiation between the parties to arrive at appropriate deductions for personnel not provided during the month as required by the TO PWS. The deductions were based upon the prices for individual key personnel in Dawson's proposals (*Id.*; R4, tabs 31 at 40-41, 32 at 43-45, 33 at 39-42). Every month Dawson would submit its calculation of the deductions. The COR would correct Dawson's calculations and approve the submission of an invoice. (R4, tab 121; *see also* R4, tab 117) Appellant would then submit its invoice for the monthly FFP amount, minus the agreed upon deduction, and the government would pay the invoice. (R4, tab 121)

*New CO Reverses COTR's Position on Deductions*

The deduction issue came to the fore at a contract meeting between Dawson personnel and contracting personnel on April 13, 2018, after new CO, Ms. Sandy Thompson, was assigned to the contract. Dawson alleges CO Thompson directed it to begin invoicing the full amount specified in the schedule of fixed monthly payments in each task order (app. resp., statement of genuine issues of material fact, ¶¶ 79-80 at 40-41). In May 2018, CO Thompson was in turn replaced by CO William Brooks. CO Brooks, in an email dated May 31, 2018, reversed the decision of CO Thompson, stating:

> I have determined that the previously established method of invoicing and acceptance should continue. The contractor should only invoice based on the personnel who actually performed the services.
>
> . . . .
>
> [T]he most efficient and accurate method to determine the Government is receiving acceptable service and the contractor is receiving proper compensation is to invoice based on the level of service provided, which would be measured by positions filled and actually providing service.

(R4, tab 83 at 1)

On July 19, 2018, Dawson's Contracts Manager sent an e-mail to the CO, formally requesting that he reconsider his decision (R4, tab 84 at 2). Having not received a response, Dawson's Contract Manager followed up on August 7, 2018, as well as on September 5, 2018, reiterating Dawson's objections (R4, tabs 84 at 1, 85 at 1).

2

*Dawson Withdraws Its Request for CO Reconsideration*

Having not received an answer to its request for reconsideration, Dawson's Contracts Manager e-mailed the CO on September 20, 2018, stating:

> Aloha Mr. Brooks, DAWSON has reconsidered our previous position regarding the deductions to our invoices on the GEITA Task orders for vacant positions, and are withdrawing our request for your further investigation and possible reconsideration in to the matter. We have determined the methodology for assessing the deductions is what Dawson agreed to at the inception of the contract, and feel it is reasonable to not change the process at this point in the contract performance period.
>
> Please disregard my emails of July 19th, August 7, and September 5th, regarding this subject.
>
> I would however, on another subject, like to request your assistance in providing Dawson with CPAR reviews assessing our performance on each of the task orders issued under this contract. I believe Michael Burns had mentioned to the COR and previous CO in a previous discussion that we were interested in obtaining these ratings to increase our past performance experience data base for future endeavors of similar scope. Therefore I am expressing our interest in obtaining these assessments starting in October 2018, if possible.
>
> Again, thank you very much for your cooperation and understanding. DAWSON looks forward to fulfilling your requirements in the future.
>
> If you have any questions or concerns please do not hesitate to give me a call. Mahalo!

(R4, tab 118 at 3-4)

The following day the CO responded by e-mail stating he considered Dawson's email to close the issue and that he would start looking into the CPAR request (R4, tab 86 at 1). There is no record of any response on the CPAR request.

After contract completion, the government sought to close out the contract. On

June 7, 2019, two months after performance of TOs 367, 382, and 383 ended, Dawson e-mailed the CO, reasserting the same objections that had been withdrawn on September 20, 2018, and submitting invoices for the balance of funds under the three TOs. (Gov't supp. R4, tab 88) On or about June 11, 2019, Appellant's invoices for the balance of funds under the task orders were rejected (gov't supp. R4, tab 89 at 2-4). Thereafter on August 27, 2019, Dawson filed a claim with the CO in the amount of $1,062,391.91, which represents the alleged funds remaining on the three TOs (gov't supp. R4, tab 90). On February 7, 2020, Dawson appealed a deemed denial of its claim to the Board.

Subsequently, the government's answer asserted the affirmative defense of accord and satisfaction (answer at 28-29).

## DECISION

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering a motion for summary judgment, the Board's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* at 249. Likewise, in reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Conclusory statements and mere denials are not sufficient to ward off summary judgment. *Mingus Constructors, Inc.*, 812 F.2d at 1390-91.

The government's sole argument in support of its motion is that Dawson's claim is barred by an accord and satisfaction between the parties. The government's position is that each month that appellant invoiced for payment and an amount was agreed to, an accord was established as to the proper amount of deductions and the accord was satisfied when the government paid Dawson's monthly invoice. Therefore, having been satisfied, Dawson is not entitled to any further compensation. (Gov't mot. at 28-33)

As movant, the government bears the burden of proof on its affirmative defense of accord and satisfaction. *Southern Defense Systems, Inc.*, ASBCA Nos. 54045, 54528, 07-1 BCA ¶ 33,536 at 166,135. Appellant argues, the government has failed to show any such agreement was reduced to writing and signed by the parties as "required for any change to the terms and conditions of the contract," excluding the possible existence of a valid accord and satisfaction (app. resp. at 51). We agree, our precedent requires a written agreement of the parties for there to be a binding modification of a contract. *See Metro Machine d/b/a General Dynamics NASSCO-Norfolk*, ASBCA No. 62221, 22-1 BCA ¶

4

38,096 at 185,009; *Kato Corp.*, ASBCA No. 51462, 06-2 BCA ¶ 33,293 at 165,085 (citing *Mil-Spec Contractors, Inc. v. United States*, 835 F.2d 865, 867 (Fed. Cir. 1987)).

In response, the government replies arguing that the requirement that the parties' agreement be reduced to writing may be satisfied by an exchange of electronic documents in this appeal, stating.

> While the Board once stated it is "plausible," the Board has never decided whether a series of signed e-mails can satisfy the signed writing requirement. *See MPR Associates,* 05-2 BCA ¶ 33,115 at 164,111 ("While there is a plausible argument that under the regulations the post-meeting emails between the parties, particularly the ACO's email of 2 May 2003 and Ms. Stirrett's response of 2 June 2003, constitute the writing required by such cases as *Mil-Spec . . .* we do not have to decide that issue in the appeal before us."). The broad definition of a "signed writing" under FAR 2.101, as well as the decisions of other courts and tribunals, indicate the Board should now answer that question in the affirmative.

(Gov't reply at 18)

We decline to extend our precedent on this issue as the government advocates. Although we do not hold here that electronic documents cannot ever constitute contract modifications, the emails here would be inadequate to the task even if we permitted their use because nothing in them purports to be a signed bilateral contract modification. *See Metro Machine*, 22-1 BCA ¶ 38,096 at 185,009, n.29 (parties agreed to compromise in an email but never signed a bilateral modification, precluding a finding of accord and satisfaction). Given the fact that the government exclusively relies upon the existence of an accord and satisfaction between the parties to support its motion, and the agreement if any has not been reduced to writing, the government has failed to meet its burden of proof establishing undisputed facts that an accord and satisfaction existed.[1]

---

[1] Because the government exclusively relies upon the existence of an accord and satisfaction, we need not address other genuine issues of material fact that may exist.

5

CONCLUSION

The government's motion is denied for the reasons stated.

Dated:  September 1, 2022

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62389, Appeal of Dawson Technical, LLC, rendered in conformance with the Board's Charter.

Dated:  September 1, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

6